FRANK CARBONE, PLAINTIFF-RESPONDENT, v. JACK C. WARBURTON, DEFENDANT-APPELLANT.

Argued January 19, 1953—Decided February 9, 1953.

Mr. *William P. Braun* argued the cause for appellant (*Mr. Frederick C. Vonhof* on the brief).

Mr. *Leo Rosenblum* argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The trial judge ruled that Dr. Sidney A. Jacobson, a licensed New York general practitioner, retired from active practice, was not qualified to testify as plaintiff's medical expert and dismissed this medical malpractice case when plaintiff offered no other expert medical testimony. The Appellate Division reversed, one judge dissenting, 22 *N. J. Super.* 5 (1952). Defendant's appeal is here pursuant to *Rule* 1:2–1(*b*).

Only a meagre part of the record was supplied on the appeal below, and from what there was the Appellate Division assumed, but mistakenly, that defendant is a general practitioner. Defendant has furnished substantially all of the record in his appendix filed in this court and it discloses that he is in fact a specialist in orthopedic and traumatic surgery and was on emergency duty in that capacity as a member of the orthopedic staff of St. Joseph's Hospital, Paterson, when plaintiff was brought to the hospital on July 21, 1946 suffering from a compound fracture of the lower leg caused by his fall from a horse.

Defendant's deposition was put in evidence on the plaintiff's case and it appears therefrom that he found a "large compound wound" in plaintiff's leg "considerably contaminated" "with debris—leaves, fragments of straw, and so forth—grit." He recognized the "chance for considerable contamination" from a fall on "a bridle path" and "to prevent incubation of bacteria that you know are contaminating the wound" decided upon an immediate operation "called by us a 'debridement.' " He would not align the fracture until the debridement was completed and he had satisfied himself "that all soiled tissue, injured tissue and foreign bodies were removed." He described in detail how the debridement was performed and the manner in which thereafter he aligned the fracture and encased the leg in a cast. He saw plaintiff only once after the operation. Otherwise postoperative care was given by other members of the hospital staff during their duty tours.

After eight days plaintiff went home under the care of his family physician. Two or three days after coming home plaintiff noticed a "reddish yellowish kind of stain" on the cast which "seemed to get larger." On August 29 the family physician sent him to Christ Hospital for X-rays to check on the bone union. The X-rays showed no definite evidence of bone union. An orthopedic surgeon, Dr. Nafash, was consulted. The cast was removed and an operation was performed on the heel bone to insert a wire to put the leg in traction and advance the bone union. Plaintiff was taken out of traction on September 14 and returned home after further X-rays disclosed that there was still "no evidence of bony union."

After plaintiff was home some weeks his family physician noticed symptoms which caused him to suspect the existence of tetanus infection in the leg. Plaintiff was sent to the Jersey City Medical Center on October 14. Tests were made resulting in a diagnosis of "a chronic form of tetanus, accompanying a compound fracture." The leg was promptly operated upon by orthopedic specialists on the staff of Medical

Center. A sinus tract "connecting the deeper tissues to the external surfaces" was excised. Several pieces of dead bone were removed "and there was a small piece of straw found in the depth of the wound."

The negligent acts and omissions charged to the defendant in the pretrial order include his alleged failure "to remove infectious and other substances from the area of the fracture," that "he caused the bone and soft tissue to become infected," "failed to administer antitetanus treatments," "negligently made irrigation of the fracture."

Defendant contends that even if error was committed in not permitting Dr. Jacobson to testify, the error was harmless. His brief asks "how could any physician [that is, testifying as a medical expert], no matter how skilled, determine that the tetanus and other illnesses, which were first diagnosed at the time of the plaintiff's admission to the Jersey City Medical Center, were proximately caused by anything done or omitted by the defendant three months before." But that is peculiarly a question of medical opinion, and Dr. Jacobson was not permitted to state his opinion of the relation between defendant's handling of the case and the subsequent tetanus infection and accompanying illnesses and their significance to the failure of a union of the broken bone. At the very least there may legitimately be inferred from the evidence that the "piece of straw" removed from the wound at Medical Center was among the "fragments of straw" which defendant said were part of the contaminating matter he sought to remove by the debridement. What connection, if any, the "piece of straw" had with the tetanus infection and the absence of a bone union, and if it had some connection whether defendant was negligent in not removing it, either because he did not follow standard medical procedures in the attempt, or followed the standards improperly, are matters of informed medical opinion. We cannot say what Dr. Jacobson's opinions are on those questions, or even that he has opinions on them, because he was not permitted to say. It is clear, however, that if it was error not to allow him

to testify, the record certainly lends no support to the contention that the error was harmless.

Appellant next cites Dean Wigmore's view, 2 *Wigmore on Evidence* (3rd ed. 1940), sec. 561, p. 641, that the trial court must be left to determine "absolutely and without review" whether a witness offered as an expert has the special knowledge and experience which renders his opinion of aid in the determination of the professional questions at issue. But New Jersey does not adopt that view. The trial judge's determination may be reviewed and if clearly erroneous may be set aside. See *Bosze v. Metropolitan Life Insurance Co.*, 1 *N. J.* 5 (1948); *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135 (1950).

We agree with the majority opinion below that the trial court mistakenly exercised its discretion in holding Dr. Jacobson to be incompetent to testify. The fact that the doctor is licensed in New York and is not licensed to practice in Paterson where defendant practices is not a ground of disqualification. The rule followed in some jurisdictions, *Sinz v. Owens*, 33 *Cal.* 2d 749, 205 *P.* 2d 3, 8 *A. L. R.* 2d 772, that a physician or surgeon is incompetent to testify as to the standards required of the defendant who practices in another community is not followed in this State. In those cases where expert testimony is essential to proof of alleged medical malpractice the testimony may be supplied by physicians "qualified by their own knowledge and experience in the same profession to know and state whether in the given circumstances of a particular case the physician or surgeon had failed to exercise that degree of knowledge and skill which usually pertains to other members of his profession." *Hull v. Plume*, 131 *N. J. L.* 511, 515 (*E. & A.* 1944); *Jedel v. Tapper*, 13 *N. J. Misc.* 809 (*Sup. Ct.* 1935); *Woody v. Keller*, 106 *N. J. L.* 176 (*E. & A.* 1930); *Lolli v. Gray*, 101 *N. J. L.* 337 (*E. & A.* 1925); *Smith v. Corrigan*, 100 *N. J. L.* 267 (*Sup. Ct.* 1924); *Ely v. Wilbur*, 49 *N. J. L.* 685 (*E. & A.* 1887). True, mere possession of a license to practice medicine does not without more conclusively estab-

lish the physician's competency to testify in a malpractice case. It may be that if the witness is permitted to state his opinion without the party against whom it is offered first demanding additional evidence of his qualifications to have an opinion, the party will not be heard later to complain of his competency to give the opinion. His license to practice at least imports some general competency to testify on all medical subjects. *Cf. Castner v. Sliker*, 33 *N. J. L.* 507 (*E. & A.* 1869); *Crawford v. American Stores Co.*, 5 *N. J. Misc.* 413 (*Sup. Ct.* 1927). The usual practice, however, is for the party to challenge the witness's qualifications at the outset, or for the trial court to require that they be developed, in which case the party offering the witness has the burden affirmatively to prove his qualifications, which is ordinarily done by the testimony of the witness himself. The opposite party has the privilege of cross-examination of the witness, *Young v. Stevens*, 132 *N. J. L.* 124 (*E. & A.* 1944). The inquiry is directed to the witness's knowledge and experience in the care and treatment of the illness or injury in suit to enable the trial judge to determine whether the witness has sufficient acquaintance with the standards recognized and applied by the medical profession in the situation under investigation to justify his expression of an opinion. Such acquaintance does not necessarily depend upon personal experience with like situations. It may equally be established from evidence of the witness's observations of the things done by fellow practitioners or of the witness's reading and study of treatises and medical journals upon the subject.

Where, as here, the witness is offered by the plaintiff in a malpractice case, his opinion must be directed to the degree of knowledge and skill which is usual in the grade of the profession which the defendant occupies and in which the defendant is employed in the particular case. *Smith v. Corrigan, supra; Policastro v. Lahnecker*, 12 *N. J. L. J.* 269 (*Essex Circ.* 1889). Here the defendant's services were rendered to the plaintiff in his capacity as an orthopedic

specialist. The majority opinion below correctly stated the rule to be that "one who holds himself out as a specialist must employ not merely the skill of a general practitioner, but also that special degree of skill normally possessed by the average physician who devotes special study and attention to the particular organ or disease or injury involved, having regard to the present state of scientific knowledge." (22 *N. J. Super.*, at *p.* 9). This does not mean, however, that a general practitioner is not competent to state an opinion concerning the acts or omissions charged to the specialist. It is enough that though a general practitioner he is shown to be versed in the subject from actual experience in his own practice or from observations of treatments by other practitioners or from reading and study. The fact that he is not a specialist may disparage his qualifications and thereby the weight to be given his opinion, but it does not render him incompetent to state an opinion. See *McGhee v. Raritan Copper Works*, 133 *N. J. L.* 376 (*Sup. Ct.* 1945).

The trial judge was persuaded that Dr. Jacobson's long retirement (he gave up active practice over 20 years ago), advanced age and infrequent observation during recent years at hospitals or other places of the treatment by fellow practitioners of the type of injury suffered by plaintiff, militated against his qualifications. We agree with the majority below that if these are deficiencies in his qualifications they go to the weight to be given to his opinion and not to his competency to testify. The training, experience and background of the doctor, outlined in the majority opinion, which we need not repeat or expand upon, evidence sufficient qualifications to allow him to state his opinion, leaving to the jury the determination of its worth.

The majority opinion emphasizes the extent of Dr. Jacobson's study of texts and medical journals which he testified he followed assiduously to keep abreast of medical and surgical progress. He specified by name several texts dealing with the treatment of injuries of the type in suit. On cross-examination he conceded that some may have been published

a decade or more ago. In the state of the record, however, it may not be inferred that they are outmoded authorities. There was no proof that any recent developments in medical and surgical science have made them so. This precise point has been considered in the past year by the Supreme Judicial Court of Massachusetts in *Thomas v. Ellis*, 329 *Mass.* 93, 106 *N. E.* 2d 687 (1952). In Massachusetts the expert evidence which is ordinarily an ingredient of proof in a malpractice case can be supplied from texts as an alternative to the testimony of medical witnesses. A 1949 statute, *Massachusetts General Laws (Ter. ed.), c. 233, sec. 79C*, reads:

"A statement of fact or opinion on a subject of science or art contained in a published treatise, periodical, book or pamphlet shall, in the discretion of the court, and if the court finds that it is relevant and that the writer of such statement is recognized in his profession or calling as an expert on the subject, be admissible in actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitaria, as evidence tending to prove said fact or as opinion evidence; provided"

that the person intending to offer the evidence gives a certain advance notice to the opposing side of the parts to be used. In *Thomas v. Ellis* the propriety of the admission by the trial judge of certain extracts from a medical treatise was challenged, among other reasons, because it was published in 1937, ten years before the act of obstetrical malpractice alleged. The high court affirmed the action of the trial judge in the absence of any proof of supervening developments in obstetrical science which precluded a preliminary finding of relevancy.

Defendant complains of the language in the majority opinion that there is a "well known reluctance of the members of the medical profession to testify against a fellow practitioner" and that this reluctance confronts the plaintiff in a malpractice case with a serious "problem of proof." Defendant objects particularly to the suggestion that the "proof difficulties adverted to" are a factor properly to be considered by a trial judge when evaluating the qualifications of such

medical expert as plaintiff does proffer as a witness in support of his action. Defendant contends that there is nothing in the record to support an inference that plaintiff was unable to secure the testimony of medical experts other than Dr. Jacobson. That is true, but trial judges of this state are not unfamiliar with the fact that medical malpractice actions often fail for lack of expert medical testimony, whatever reason may explain the plaintiff's inability to secure it. It has been said that the Massachusetts statute referred to above was enacted expressly because the Legislature of that state deemed that the interests of justice to plaintiffs with legitimate malpractice claims required that there be provided an alternative means of meeting the requirement for expert evidence. 10 *N. A. C. C. A. Law J.* 257. We agree, however, that plaintiff's inability to obtain some other expert witness cannot be a reason for accepting the opinion testimony of a proffered medical expert not otherwise qualified. The defendant's legal duty must be measured by some medical standard of care and treatment, and what that standard is and whether defendant negligently departed from it to the plaintiff's injury can competently be testified to only by one qualified to know of it.

As there must be a new trial, one other argument of defendant will be answered. He argues that the trial court improperly refused to permit cross-examination of Dr. Jacobson as to whether the doctor solicited lawyers for the employment of his services in malpractice cases and as to whether it was true that the doctor was adjudged unqualified to testify in other malpractice cases tried in New Jersey courts. We think the trial judge was clearly right. The subject of Dr. Jacobson's alleged solicitation of lawyers does not go to his qualifications although it would be a proper matter for inquiry to show bias in any opinion testimony adverse to the defendant which he may be permitted to give on the retrial. And since the question in the particular case is his competency to testify concerning the medical standards applicable to the injury in suit, it cannot be relevant for

any purpose that he was found disqualified to testify in other cases where the pertinent standards may have been very different.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice OLIPHANT—1.