GEORGE B. BREWER, SARA H. BREWER DOWNING, FREDERICK W. BREWER AND GERTRUDE BEE BREWER, PLAINTIFFS-APPELLANTS, v. ALONZO PORCH, DEFENDANT-RESPONDENT.

Argued November 4, 1968—Decided January 20, 1969.

168

170

*Mr. Gerald W. Conway* argued the cause for appellants, (*Messrs. Schreiber and Lancaster,* and *David L. Horuvitz,* attorneys).

*Mr. Louis B. LeDuc* argued the cause for respondent, (*Messrs. Herbert H. Butler* and *Louis B. LeDuc,* attorneys).

The opinion of the court was delivered by

HANEMAN, J.   The Chancery Division found that defendant had good title to certain realty and that plaintiffs had no right to redeem the land from a tax sale certificate or to other relief incidental thereto. 93 *N. J. Super.* 66 (*Ch. Div.* 1966). The Appellate Division affirmed the judgment 98 *N. J. Super.* 583 (*App. Div* 1968) and this Court granted plaintiffs' petition for certification. 51 *N. J.* 464 (1968).

In 1927, George B. Brewer, one of the plaintiffs, had title to the land in question, some 77 acres in Logan Township. In that year he conveyed to his mother, Sara H. Brewer, who died intestate on June 10, 1948. The plaintiffs in this action are her heirs. Although out of title, George Brewer leased a small portion of the property to defendant, who

farmed the same during 1936 and 1937. On August 7, 1937, the Tax Collector of Logan Township sold the land for nonpayment of taxes. There being no other purchaser, it was struck off and sold to the Township. In 1938 defendant leased the entire tract from the Township for approximately two years. In 1939 the Township sold and assigned the tax sale certificate to him upon his payment of the full amount of taxes, interest and costs then due the municipality. Defendant immediately entered into possession of practically all of the lands. He farmed practically the entire tract until 1960 when ill health forced him to discontinue his agricultural activities. Since 1961 he has leased the farm to Gordon Hurff who has continued to farm "all of it." Defendant took no action by way of notice under *N. J. S. A.* 54:5–77 *et seq.*, or by way of action in the Chancery Division of the Superior Court, under *N. J. S. A.* 54:5–85 *et seq.*, to foreclose plaintiffs' right of redemption.

On March 3, 1965, plaintiffs paid the Tax Collector of Logan Township, the amount required to redeem the lands from the above-mentioned tax sale. (*N. J. S. A.* 54:5–54) Defendant refused to accept the money so paid and to surrender the tax sale certificate. Plaintiffs then filed suit, demanding the cancellation of the tax sale certificate, recovery of the value of defendant's use of the land since 1938 and an accounting of the rents received by defendant therefrom. Defendant answered that the right of redemption was terminated and that he had obtained fee title by his entry into open possession under the sale, which possession continued for upwards of 20 years without redemption by plaintiffs. See *N. J. S. A.* 54:5–78. He therefore demanded judgment declaring that he had good title and that plaintiffs had no right of redemption. The trial court found for defendant and judgment was entered accordingly. The Appellate Division affirmed, as noted above.

Plaintiffs argue that the holder of a tax sale certificate cannot, by possession under the certificate, cut off a fee owner's right to redeem. Although plaintiffs admit that the

tax sale law at the time of the sale (*L.* 1918, *c.* 237, § 47) contained, and presently (*N. J. S. A.* 54:5–78) contains, a provision barring redemption where there has been "no redemption within twenty years after the purchaser has entered into open possession, since continued, under the sale," they argue that this provision was implicitly repealed when *L.* 1929, *c.* 169 deleted from § 34 of *L.* 1918, *c.* 237 (the predecessor of *N. J. S. A.* 54:5–50) the express grant of a right to possession to the holder of a recorded tax sale certificate. The pivotal question is whether *L.* 1929, *c.* 169 did implicitly repeal that portion of *L.* 1918, *c.* 237, § 47 (*N. J. S. A.* 54:5–78) which provided for the barring of an owner's right of redemption by 20 years open and continuous possession of the lands under the tax sale certificate. The answer lies in an ascertainment of the legislative intent in adopting *L.* 1929, *c.* 169.

At the outset it must be recognized that "municipal liens, and the rights arising therefrom, are solely statutory in origin and are fixed and determined by the statute." *Dvorkin v. Dover Tp.,* 29 *N. J.* 303, 319 (1959); See also *Nelson v. Naumowicz,* 1 *N. J.* 300 (1949); *Absecon Land Co. v. Keernes,* 101 *N. J. Eq.* 227 (*E. & A.* 1927); *Raritan Tp. v. Rotante,* 92 *N. J. Super.* 319 (*Ch. Div.* 1966).

It must also be recognized that, in seeking to ascertain the legislative intent, it is essential that certain cardinal principles of statutory construction be kept in mind.

The first of these is that, ordinarily, implied repealers are not favored in the law. *Swede v. City of Clifton,* 22 *N. J.* 303 (1956); *Goff v. Hunt,* 6 *N. J.* 600 (1951); *Loboda v. Clark Tp.,* 40 *N. J.* 424 (1963). However, when a later expression of legislative will is so clearly in conflict with an earlier statute on the same subject that the two cannot reasonably stand together, each in its own particular field, the courts will find a legislative intent to supersede the earlier law. The test is whether the two statutes are inconsistent or repugnant. *Swede v. City of Clifton, supra; Montclair v. Stanoyevich,* 6 *N. J.* 479 (1951); *Two Guys from*

*Harrison, Inc. v. Furman,* 32 *N. J.* 199, 223 (1960); *Dept. of Labor v. Cruz,* 45 *N. J.* 372 (1965).

Another principle is that, in seeking to discover the legislative intent, the statute must be read in the light of the old law, the mischief sought to be eliminated and the proposed remedy, *Key Agency v. Continental Cas. Co.,* 31 *N. J.* 98, 103 (1959); *San-Lan Builders, Inc. v. Baxendale,* 28 *N. J.* 148 (1958), and to that end reference may be had to its history and purpose, *State v. Brown,* 22 *N. J.* 405 (1956). In order to ascertain the purpose, the preamble and statements attached to the bill which was enacted into the statute may be considered. *Bass v. Allen Home Improvement Co.,* 8 *N. J.* 219 (1951). Acts in *pari materia* as well as related acts not strictly in *pari materia,* should be examined. *Appeal of N. Y. State Realty & Terminal Co.,* 21 *N. J.* 90 (1956); *State v. Brown, supra; Key Agency v. Continental Cas. Co., supra.*

Yet another principle is the assumption that the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes. *Matawan Borough v. Monmouth Cty. Tax Bd.,* 51 *N. J.* 291 (1968); *State v. Federanko,* 26 *N. J.* 119 (1958); *City of Newark v. Rockford Furniture Co.,* 4 *N. J. Super.* 205 (*App. Div.* 1949).

Where there are two contradictory provisions in a statute, the primary object is to ascertain the legislative design with reasonable certainty, and where the two, separated in point of time of enactment so that the earlier section was by implication repealed by the latter, are embodied in a revision of general laws, the re-enactment of the former is deemed an oversight and ineffective. *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157 (1949).

We turn now, to the statute in question and related acts: In 1918, when the Tax Sale Revision, *L.* 1918, *c.* 237 (designated "tax sale law" in the revision of 1937, *N. J. S. A.* 54:5–1), was adopted, it contained the following provisions: ·

"34. The purchaser may record the certificate of sale in the office of the clerk or register of the county where the land lies as a mortgage of land, and *thereupon shall be entitled to the immediate possession of the property sold and described in the certificate*, and to all the rents and profits thereof from and after the date of record until redemption." (Emphasis supplied) (Now *N. J. S. A.* 54:5–50)

"47. If there shall be no redemption within the said term limited by the notice provided in the preceding section; or *if there shall be no redemption within twenty years after the purchaser has entered into open possession, since continued, under the sale;* then in either case, the right of redemption shall be barred." (Emphasis supplied) (*L.* 1918, *c.* 237.)

As far as here relevant, § 47 has continued in essentially the same form from 1918 to date. See *N. J. S. A.* 54:5–78. By *L.* 1926, *c.* 81, the Legislature amended *L.* 1918, *c.* 237, § 34 by adding:

"* * * *provided, however*, that purchaser at tax sale of a dwelling house occupied by the delinquent owner shall not be entitled to collect rents for such part of the dwelling house as shall be occupied by the delinquent or his immediate family until after the expiration of two years from the date of record of the certificate of sale" (*L.* 1926, *c.* 81)

In 1929, a further amendment to § 34 caused it to read, as far as here pertinent, as follows:

"The purchaser may record the certificate of sale in the office of the clerk or register of the county where the land lies as a mortgage of land. * * *" (*L.* 1929, *c.* 169)

Appended to the 1929 bill was a Statement which reads: "The purpose of this act is *lo force the forclosure of tax liens* by eliminating the right of purchasers to collect rents from the properties so purchased by them." (Emphasis supplied) It is to be noted, that so much of the statute as read "and thereupon shall be entitled to the *immediate possession* of the property sold and described in the certificate, and all the rents and profits thereof from and after the date of record until redemption" (emphasis supplied) was excised by this amendatory act.

In 1933, the Legislature passed the "Stout Act", *L.* 1933, Special Session, *c.* 6; *R. S. App. A* :4–1, *et seq.* Said act reads in part as follows:

"WHEREAS, the only remedy to collect delinquent taxes against real property is by a tax sale thereof on and after July first following the year in which such taxes become due and payable, and this is inadequate *because the purchaser at the tax sale cannot go into possession of the property* and collect the rents and income therefrom, *and therefore, there is a lack of buyers,* and the property is struck off to the municipality and the taxes remain unpaid;" (Emphasis supplied).

\* \* \* \* \* \* \*

"That at any time after any taxes or any installment thereof heretofore or hereinafter levied and assessed against real property in any municipality shall have been delinquent for more than six months and remain due and unpaid, the collector or other officer charged with the collection of táxes in such municipality, hereinafter designated the 'collector' may, by and with the approval of the governing body of such municipality, and upon five days' notice to the owner, make application to the Court of Chancery by bill or petition to be appointed receiver ex officio of the rents and income of such real property \* \* \*."

\* \* \* \* \* \* \*

"Real property which has been heretofore or may be hereafter sold for the nonpayment of delinquent taxes, shall be subject to the provisions of this act for the purpose of collecting such delinquent taxes, penalties, interest and costs and expenses as aforesaid."

\* \* \* \* \* \* \*

"This act shall not apply to real property occupied by the owner as his residence and from which he derives no rent or to farm property occupied by the owner thereof and from which he derives no rent.

This act shall take effect immediately and shall continue in force in respect to all proceedings instituted hereunder, within a period of three years from the date hereof."

*L.* 1936, *c.* 20 continued the term of the foregoing statute for an additional three years, and *L.* 1939, *c.* 362 re-enacted the Stout Act without a preamble and without any limitation on its future continuous viability. The statement appended to the bill reads:

"This act is a copy of the so-called 'Stout Act' except that it omits the preamble and makes the act permanent.

The so-called 'Stout Act' was enacted as an emergency measure in 1933 for a period of three years, and in 1936 it was further

extended for another period of three years, which will expire in October of this year. The results achieved under this Act by municipalities throughout the State have shown that it should be made a part of the permanent laws for the collection of taxes, and that is the purpose of this bill.

This Act takes effect on the last day for instituting process under the temporary Act; proceedings instituted under temporary Act before said date may be continued to conclusion under said Act."

In 1941, the Legislature enacted *c*. 82, which reads in pertinent part:

"Any person who shall knowingly *misrepresent*:
*       *       *       *       *       *       *       *
c. that the holder of any tax sale certificate other than a municipal corporation *is entitled to possession of the premises sold,* or to the rents, issues or profits therefrom, shall be guilty of a misdemeanor". (Emphasis supplied).

The Statement of purpose appended to said bill reads:

"The purpose of this act is to make it a misdemeanor to knowingly *misrepresent* the period for redemption, the amount required for redemption *or that the holder of a tax sale certificate is entitled to the possession* or the rents of premises sold for taxes." (Emphasis supplied).

In 1942, the tax sale law was amended by *c*. 54 which reads:

"Whenever a municipality shall have become the purchaser of any lands at any tax sale and the certificate of sale shall have been recorded in the manner provided by chapter five of Title 54 of the Revised Statutes, *such municipality shall thereafter be entitled to immediate possession of the property sold and described in the certificate* and to all the rents and profits thereof from and after the date of record and *while the holder thereof,* until redemption, * * *." (Emphasis supplied).

It appears from the foregoing statutes that in 1918 the Legislature granted to the holder of a recorded tax sale certificate the immediate and absolute right to the pos-

session of the property described in the certificate; limited this right in 1926; and completely eliminated it in 1929. From 1929 there has existed no statutory grant of any right to possession by an individual for any purpose. Since the rights arising under a tax sale certificate are, "solely statutory in origin and are fixed and determined by the statute," in the absence of affirmative statutory grant, the holder of a tax sale certificate has no such right. The desire of the Legislature not to append such a right to a tax sale certificate is made abundantly clear not only by the absence of such a grant but is emphasized by the affirmative act of passing a statute which deleted from the then existing law words which had theretofore given rise to such a right.

Within four years the Legislature construed *L.* 1929, *c.* 169, in the preamble of the Stout Act, when it stated that "the purchaser at the tax sale cannot go into possession of the property." This reflected the understanding and intent of the Legislature in passing the 1929 act and was expressive of the public understanding thereof as well. That *L.* 1929, *c.* 169 was intended to deny this privilege even to a municipal holder of a tax sale certificate is shown by the provision of the Stout Act which created as a substitute for possession by a municipality a limited right to the collection of rents by a court appointed receiver. Had there been a right to possession after 1929, there would have been no necessity for the Stout Act as the right to collect rents is ordinarily incident to the right to possession. The Legislature, by passing the Stout Act, in effect refused to grant the individual holder a right to possession in order to eliminate the cause of the noted lack of buyers of tax sale certificates, *i. e.,* the lack of power of an individual to take possession of the property. Instead, the Legislature employed an alternative for tax collection by sale to an individual by granting the *municipality* the restrictive right to collect rents. The prohibition against possession by the individual tax certificate holder was continued. The enactment of the Stout Act as a permanent part of the statutory system, re-emphasized

the legislative intention to deny an individual holder the right to possession.

Again, by *L.* 1941, *c.* 82, the Legislature recognized that the tax certificate holder had no right to possession of the subject property, and made the mere representation by a private holder that he had such a right a misdemeanor. The legislative pattern of denying an individual tax certificate holder the right to possession was again made manifest by *L.* 1942, *c.* 54, which granted to *a municipality alone* the right to possession and then only so long as the municipality continued as owner of the certificate. Implicit in this enactment is the conclusion that assignment of the tax certificate to an individual terminates the right to possession.

We shall next consider judicial construction of the tax sale law with regard to the right to possession. The several courts of this State have in a variety of types of litigation reiteratively held that an individual holder of a tax sale certificate has no right to possession of the tax delinquent lands. Some of these cases and the actions in which the question arose are: *Nelson v. Naumowicz,* 1 *N. J.* 300 (1949) (Attempted recovery by certificate holder for repairs and improvements.); *Forster v. Davenport,* 128 *N. J. Eq.* 385 (*Ch.* 1940) (Suit by certificate holder for appointment of a rent receiver.); *Diamonde v. Berkeley Township,* 142 *N. J. Eq.* 140 (*Ch.* 1948) (Recovery by owner for rents and damages from certificate holder who took possession.); *Taylor v. Morris,* 1 *N. J. Super.* 410 (*Ch. Div.* 1948) (Allowance for repairs made by certificate holder to offset rents collected by him while wrongfully in possession.); *Morvay v. Gressman,* 29 *N. J. Super.* 508 (*App. Div.* 1954) (Attempted recovery by certificate holder for repairs and improvements.); *Raritan Tp. v. Rotante,* 92 *N. J. Super.* 319 (*Ch. Div.* 1966) (Motion to open final judgment under In Rem Foreclosure Act by holder of tax sale certificate). The long acquiescence of the Legislature in the above judicial construction further emphasizes the conclusion that such construction was consistent with and expressive of legislative

intent. *In re Keogh-Dwyer*, 45 *N. J.* 117 (1965); *Egan v. Erie R. Co.*, 29 *N. J.* 243 (1959); *Barringer v. Miele*, 6 *N. J.* 139 (1951).

For defendant to succeed on his thesis he must have begun and continued his possession "under the sale." *N. J. S. A.* 54:5–78. The phrase "under the sale" denotes possession permitted by the tax sale act. Mere adverse possession without legislative authority is insufficient. The foregoing statutes and cited decisions demonstrate that the legislative intent and purpose which undergirded the passage of *L.* 1929, *c.* 169, was to deny the holder of a tax sale certificate the power to terminate the right of redemption by the act of taking possession of the tax delinquent premises and continuing such possession for 20 years. This denial was imposed in order to force the holder to more promptly bar the right of redemption by a Chancery foreclosure action. That unaltered legislative policy has continued since 1929.

The termination of the right to possession made the requirement of *N. J. S. A.* 54:5–78 for continued adverse possession under the certificate repugnant to the later statute, *L.* 1929, *c.* 169. The two statutes cannot reasonably stand together each in its own particular field. The later therefore repealed the former by implication. *Newark v. Dept. of Civil Service*, 68 *N. J. Super.* 416 (*App. Div.* 1961); *Two Guys from Harrison, Inc. v. Furman*, 32 *N. J.* 199 (1960). Accordingly, we conclude that so much of *N. J. S. A.* 54:5–78 as reads "or if there shall be no redemption within twenty years after the purchaser has entered into open possession, since continued, under the sale," was repealed and plaintiffs' right to redemption has not been barred by defendant's actions under said statute. The judgment of the Appellate Division is accordingly reversed.

However, defendant now argues that in any event, he has good title by upwards of twenty years adverse possession under *N. J. S.* 2A:14–6, 7, and that plaintiffs therefore have no such interest in the land as would entitle them to redeem. *N. J. S. A.* 54:5–54. What has heretofore been said

of defendant's rights under the tax sale act in no way affects the rights he may have under *N. J. S.* 2A :14–6, 7. Although some evidence was adduced at the trial which might have a bearing on that subject, the record is not clear as to whether defendant had advanced this thesis as an issue. In the light of the uncertainty in the pleadings, and the failure to completely try out this issue, the matter shall stand remanded for a framing of a proper pre-trial order and the trial of that issue. The other issues of right to redemption, recovery for use and occupation, and accounting of the rents, will await the outcome of the primary issue of title.

Reversed and remanded for proceedings consistent with the foregoing.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.