Charles J. PETERS and/or Estelle Peters,
his wife, Plaintiffs,

v.

Albert GELB and Harold S. Rafal,
Defendants.

Superior Court of Delaware,
New Castle.

March 1, 1973.

C. Waggaman Berl, Jr., of Booker, Green, Shaffer, Berl & Wise, Wilmington, for plaintiffs.

Rodney M. Layton, of Richards, Layton & Finger, Wilmington, for defendants.

Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendants.

TAYLOR, Judge.

Plaintiffs, husband and wife, sued defendants for damages resulting from an unsuccessful vasectomy operation performed by defendants on husband.

At the trial defendants testified to the surgical procedure which they followed. A urological surgeon who practices in Wilmington, Delaware testified that the surgical procedure described by defendants was the accepted procedure. He further testified that recent medical literature disclosed that in a small percentage of such operations a physiological phenomenon known as recanalization occurs.

A physician presently residing in New Hampshire, testified for plaintiffs. He described the surgical procedure which is generally accepted and stated his opinion that it was probable that defendants failed to sever the vas deferens on one side. The jury returned a verdict in favor of plaintiffs in the total amount of $5,000.00.

Defendants have moved for judgment notwithstanding the verdict or in the alternative, for a new trial.

■ The Court will consider first the issue of the qualification of plaintiffs' expert, Dr. Shaw, to testify concerning the applicable standard of care and the question of the probability that defendants failed to meet that standard. The Delaware Supreme Court has held that recovery against a physician must be predicated upon a showing of failure to use the standard knowledge and skill required of doctors or the failure to use reasonable care and diligence in the application of such knowledge or skill. Christian v. Wilmington General Hospital, Del.Supr., 11 Terry 550, 135 A.2d 727 (1957). Plaintiffs have the burden of proving the medical standards to which defendant doctors were required to conform and that defendants failed to meet those standards. ibid.

■ In Delaware it has been held that a surgeon is bound by the same standards of care and competence as other surgeons in good standing ordinarily adhere to in the same or a similar community. Di Filippo v. Preston, Del.Supr., 3 Storey 539, 173 A.2d 333 (1961). A function of the expert medical witness is to establish that standard. ibid.

■■ A physician is not an insurer of the success of his treatment. Mitchell v. Atkins, Del.Supr., 6 W.W.Harr. 451, 178 A. 593 (1935). Nor does the mere absence of success of his treatment ordinarily establish the negligence or lack of skill of the physician in rendering the treatment. ibid.

In the instant case, there appear to be two objections to the expert: (1) his familiarity with practices in this or similar communities, and (2) the timeliness of his expertise.

The expert, Dr. Robert Shaw, received an M.D. degree in 1945 from Harvard Medical School, had surgical training at Massachusetts General Hospital for five years, was an associate clinical professor of surgery at Harvard Medical School. He was an active surgeon until 1967. In his early days of surgery he performed many vasectomies. Shortly after World War II, he studied and wrote papers on problems of sterility and techniques to reconnect the vas deferens after it had been surgically severed. He

has not performed a vasectomy in the last fifteen or twenty years, referring such cases to a urologist. He has assisted in the performance of such operations as recently as 1964. His work since that time has centered around public health and the general medical needs of a community in New Hampshire.

■ Defendants contend that this background demonstrates an absence of familiarity with techniques generally followed in this and similar communities which bars the expert from testifying. This principle upon which defendants rely was accepted by the Delaware Supreme Court in Di Filippo v. Preston, supra. It recognizes that there often is a disparity in procedures and techniques sometimes growing out of differences in available equipment and facilities and differences in available publications. Where such differences exist, the physician on trial is entitled to be judged according to the standards applicable to one in his particular circumstances.

Ease of communication, availability of medical publication and a trend toward uniformity have reduced the impact of this requirement. 37 A.L.R.3d 420–454; 8 A.L.R.2d 774. Thus, where it clearly appears that a procedure or technique has become universally accepted, the requirements of the rule may be met by an expert even though he is not familiar with the specific community. Douglas v. Bussabarger, 73 Wash.2d 476, 438 P.2d 829 (1968); Pederson v. Dumouchel, 72 Wash.2d 73, 431 P.2d 973 (1967); Brune v. Belinkoff, 354 Mass. 102, 235 N.E.2d 793 (1968); Carbone v. Warburton, 11 N.J. 418, 94 A.2d 680 (1953); McElroy v. Frost, Okl., 268 P.2d 273 (1954).

In this instance, plaintiffs' expert testified that the technique which he described "is quite standardized over the United States". Defendants' medical witnesses did not dispute this statement. They did not testify that a different standard is applied in this community. Furthermore, the description of the accepted surgical technique given by plaintiffs' expert bears a striking similarity to the technique which defendants testified that they followed. No material difference has been pointed out to the Court. Even if defendants' description of the technique which they state they followed is accepted, there is no direct evidence that defendants departed from the accepted professional standard. Cf. Christian v. Wilmington General Hospital, supra.

Plaintiffs' case rests upon the inferential conclusion drawn by plaintiffs' expert that since the operation failed to shut off the flow of sperm, defendants had failed to follow the prescribed procedure. This conclusion apparently stems from the expert's firm belief that whenever the described surgical procedure is faithfully followed a flow could not thereafter occur. In response to a hypothetical question which embodied these facts, the expert stated: "So I believe that an error in technique was made and one vas was not interrupted." To reconcile the facts which were inconsistent with this conclusion, he surmised that the sperm count of July 15 was probably "an erroneous determination, a false negative in other words" and that the pathology report which referred to segments of vas deferens was erroneous in that it either did not examine and identify each of the two specimens or it was carelessly done.

Nothing in the record indicates that the laboratory which made the two reports was not a proper laboratory to make such reports or that it is contrary to accepted standards for a surgeon to rely upon reports of this sort which have been made by the laboratory.

The testimony thus narrows to the single item of expert opinion that in applying an accepted procedure the surgeon had mistaken a thrombosed vein for a vas deferens and had cut and tied the vein instead of the vas.

■ Expert opinion is not only permitted but required in many matters involving the practice of medicine or surgery, including the issue of causation or proximate cause. 13 A.L.R.2d 38, 120; 66 A.L.R.2d 1082; 27

A.L.R.2d 1263. In the case of an opinion based solely on the deductive process, great care must be taken to assure that the expert has the requisite background of knowledge and experience upon which to found his conclusion. Timeliness of the expert's knowledge has not often come under discussion in reported decisions. In many areas of the medical profession the body of knowledge has not changed materially over a period of time. In such case, a physician may be permitted to testify even though he has not maintained close contact with the profession in recent years. Cf. Gunter v. Whitener, Mo.App., 75 S.W.2d 588 (1934). Similarly, writings of ten years age may be resorted to where no change in professional standards has occurred since the writing. Thomas v. Ellis, 329 Mass. 93, 106 N.E.2d 687 (1952).[1] In some instances however, the body of knowledge has undergone substantial change. Cf. King v. Ditto, 142 Or. 207, 19 P.2d 1100, 1102 (1933).

■ A professional is entitled to be judged according to the state of the art appropriate to the litigation. 83 A.L.R.2d 7, 45; Carbone v. Warburton, supra. The record indicates that there have been developments in recent years in the body of knowledge concerning the results of vasectomy procedures. Defendants' expert testified at length concerning the literature.

In Lane v. Cohen, Fla.D.C.App., 201 So.2d 804 (1967) the Court cited uncontradicted testimony that in a small percentage of instances of vasectomy, the operation is unsuccessful.

■ For the past fifteen to twenty years, plaintiffs' expert had referred cases requiring this operation to a urologist and had not maintained a study in recent years of the developments in the field. Compare Carbone v. Warburton, supra.[2] Hence, he lacked the current expertise which is required of one who is called upon to express a professional opinion concerning probable causation of unfavorable results following surgical procedure. The jury should not be called upon to evaluate the weight to be given to testimony of an unqualified expert. Di Filippo v. Preston, supra.

Accordingly, the opinion testimony by plaintiffs' expert that defendants probably failed to follow the described procedure must be stricken.[3] It is unnecessary to consider the value of this opinion testimony when tested against the uncontroverted laboratory results.

Absent the stricken testimony, the record does not support the verdict.

The Court concludes that there is not a sufficient record here to satisfy the requirements of Rule 50 for judgment notwithstanding the verdict. 5A Moore's Federal Practice, pp. 2357-8, § 50.08; Eisenberg v. Smith, 3 Cir., 263 F.2d 827 (1959).

Under these circumstances it is within the power and discretion of the Court to grant a new trial. Civil Rule 59; 6A Moore's Federal Practice, 3777, § 59.08 [2]; Tyndall v. Tyndall, Del.Supr., 214 A.2d 124 (1965); McCloskey v. McKelvey, Del. Super., 4 Storey 107, 174 A.2d 691 (1961).

Accordingly, a new trial is granted.

It is so ordered.

---

1. A Massachusetts statute, General Laws (Ter.Ed.) c. 233, § 79C, permits introduction of qualified medical publications in medical malpractice cases.

2. In *Carbone* the expert, although retired, had continued his studies of the current literature during the years since retirement.

3. At the stage during the trial when the expertise of the witness was raised, it was not clear that the significant part of the expert's testimony would involve the opinion of causation deduced merely from the results of the operation.