916 A.2d 1081 (2007)
391 N.J. Super. 49
Cresencio ESPINAL, Elizabeth Rosario, Plaintiffs-Respondents,
v.
Marino ARIAS, Hanover Insurance Company, Defendants, and
Mabel Kolias, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2007.
Decided March 8, 2007.
*1083 Leary, Bride, Tinker & Moran, attorneys for appellant (John G. Tinker, Jr., Cedar Knolls, on the brief).
Otto Marcano, New Brunswick, attorney for respondent.
Before Judges CUFF, WINKELSTEIN and FUENTES.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
In this opinion, we address three issues that routinely arise during the trial of a personal injury case in which the plaintiff's claim for damages is constrained by the verbal threshold of the 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35. Those issues are: (1) the scope of a party's right to qualify its expert; (2) whether the court is required to instruct the jury not to speculate about a plaintiff's medical expenses when the plaintiff does not ask for reimbursement for those expenses; and (3) whether injuries caused by the accident that do not meet the verbal threshold may be considered by the jury in deciding the plaintiff's noneconomic loss, as long as at least one of the plaintiff's injuries meets the threshold.
The issues come before us following a trial in which the jury awarded plaintiff Cresencio Espinal[1] $200,000 in noneconomic damages. Defendant Mabel Kolias appeals and we reverse. Defendant was not provided with a fair opportunity to qualify her expert before the jury, and the judge failed to instruct the jury not to speculate about plaintiff's medical expenses.

I.
Plaintiff and defendant were in an automobile accident on August 11, 2001, when defendant drove her car through an intersection and struck plaintiff's car. Defendant stipulated liability and the issue of noneconomic damages was tried before a jury. After approximately one and one-half days of trial, the jury rendered a verdict in favor of plaintiff. The court denied defendant's new trial motion.
At trial, plaintiff testified that following the accident he suffered from headaches and pain in his neck and back; he received medical treatment approximately three times a week for seven months. He had been employed as a forklift operator prior to the accident, and, though he did not miss work following the accident, he testified that he could no longer perform that type of work so he obtained more sedentary *1084 employment. Plaintiff made no claim for medical expenses or lost wages.
Under the terms of plaintiff's automobile insurance coverage, his right to sue was limited by AICRA, which exempts a tortfeasor from liability for noneconomic loss to the person injured in the automobile accident unless that person "sustained a bodily injury which result[ed] in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J.S.A. 39:6A-8a. Plaintiff claimed he met the threshold requirement by sustaining a permanent injury caused by the accident.
To prove his claim, plaintiff presented the testimony of Erica David, M.D. Dr. David, a graduate of Johns Hopkins University and Mt. Sinai Medical School, did her residency at New York Presbyterian Hospital. The court qualified her as an expert in physical medicine and rehabilitation. The doctor did not testify that she was board certified.
Dr. David examined plaintiff on May 5, 2005. She also reviewed MRI and EMG reports, as well as the reports and records of plaintiff's primary treating physician, Dr. Cipriaso, who treated plaintiff immediately following the accident. According to Dr. David, post-accident MRIs of plaintiff's cervical and lumbar spine showed mild disk bulges at C5-6 and C6-7; and disk bulges at L4-5 and L5-S1. Dr. David opined that the disk bulges were permanent and were responsible for plaintiff's pain. She also concluded that an MRI showed a left-sided herniation at [T]6-7, a more severe injury than a disk bulge. An EMG showed a bilateral C8 radiculopathy  pinched nerves in plaintiff's neck. Dr. David's assessment of plaintiff was cervical pain syndrome, thoracic pain syndrome, low back pain syndrome, and cervical radiculitis. She concluded that the injuries were permanent, would continue to cause plaintiff pain, and were attributable to his car accident.
Defendant's position was that the bulk of plaintiff's disabilities were pre-existing, and not caused by the accident. She offered the testimony of Edward Rachlin, M.D., a board-certified orthopedic surgeon, who specialized in physical medicine and rehabilitation.
Dr. Rachlin examined plaintiff on October 14, 2002. During the examination, plaintiff complained of pain, and expressed "functional pain"  pain upon light touch to different areas of his neck, right shoulder, and spine. Dr. Rachlin found no muscle spasm in plaintiff's neck; or in his dorsal, thoracic or lumbar spine. He considered plaintiff's complaints to be "highly subjective," with "no objective musculoskeletal findings" and no "objective neurological deficits." He opined that plaintiff did not suffer any permanent residuals as a result of the accident.
Dr. Rachlin also reviewed Dr. Cipriaso's reports, and the MRI and EMG reports. He testified that plaintiff's MRIs showed "normal physiological bulges" that were part of the aging process. He found "no evidence of herniation or cord compression," and he considered the minor disk bulging to be a "normal finding."

II.
Against these contrasting expert opinions, we examine defendant's argument that her inability to fully present Dr. Rachlin's qualifications to the jury deprived her of a fair trial. During defense counsel's voir dire of Dr. Rachlin, the doctor testified that he was licensed to practice medicine in New Jersey; and that he specialized and was board certified in both orthopedic surgery and in physical medicine and rehabilitation. He explained that *1085 he had forty years of experience performing surgery, but he had terminated his practice in 1992, when he began to focus more on research, writing and teaching. He testified that he taught overseas for the American Academy of Orthopedic Surgery.
When defense counsel[2] began to question the doctor about his teaching experience, plaintiff's counsel interrupted, with an offer to stipulate to the doctor's qualifications. Despite defense counsel's attempt to object, the court agreed to qualify Dr. Rachlin without providing defense counsel with an opportunity to elicit additional testimony from the doctor as to his qualifications. The record shows the following:
DEFENSE COUNSEL: Doctor, and you testify that you travel overseas and assist in teaching. Where is that?
DR. RACHLIN: This is a teaching program. I teach in medical school 
PLAINTIFF'S COUNSEL: Judge, at this point  I am very familiar with the doctor's expertise. I have no objection to having him qualified as an expert if you want to move this along, Your Honor.
COURT: Yes, I do.
DEFENSE COUNSEL: Your Honor, I request respectfully that we have a chance 
COURT: I feel that now that basically all we're trying to do is get him qualified as an expert and based upon what I heard so far, and I know Dr. Rachlin, he's been here before, and as long as the plaintiff has stipulated to the fact, I see no reason why we should go any further with regard to his medical qualifications. I'm satisfied based upon what he's testified to, based upon his previous presentations in this courtroom that he is qualified to testify as an expert in the field of orthopedics and what is it, pain management, Doctor?
DR. RACHLIN: Physical medicine rehabilitation.
Following this colloquy, defense counsel began questioning Dr. Rachlin about his examination of plaintiff. Before Dr. Rachlin's testimony was completed, however, defense counsel placed a more detailed objection on the record, out of the jury's presence. The substance of the objection, and as is argued on appeal, was that the judge improperly deprived defendant of her right to place all of her expert's credentials before the jury, which prejudiced her because the extent of Dr. Rachlin's expertise, as compared to that of plaintiff's expert, was critical to her case. On appeal, defendant additionally claims that the judge's comments regarding Dr. Rachlin's previous appearance in court lent weight to plaintiff's counsel's subsequent attack on Dr. Rachlin, in which he characterized the doctor as a hired gun who only testified for defendants. We agree with defendant that in context, the failure to permit defense counsel to complete her voir dire of her expert, along with the judge's comments, were clearly capable of producing an unjust result. R. 2:10-2.
N.J.R.E. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Whether an expert is competent to testify is addressed to the sound discretion of the trial court. Carey v. Lovett, 132 N.J. 44, 64, 622 A.2d 1279 (1993). The question here, however, is not whether Dr. Rachlin was competent to testify, or whether his *1086 testimony would assist the jury, but whether the court provided defense counsel with a fair opportunity to present the doctor's qualifications to the jury.
To succeed in his lawsuit, plaintiff was required to establish that within a reasonable degree of medical probability he sustained permanent injuries as a result of the automobile accident. N.J.S.A. 39:6A-8a. Thus, a showing of both causation and permanency was central to plaintiff's case. The corollary is that to succeed in defending against plaintiff's claim, the defense had to show that plaintiff's injuries were either unrelated to the accident or not permanent. Expert testimony on these issues was therefore critical for both parties. Cf. Oswin v. Shaw, 129 N.J. 290, 319, 609 A.2d 415 (1992) (plaintiffs must submit objective, credible evidence to ascertain the presence of a genuine, disabling injury); Kelly v. Borwegen, 95 N.J.Super. 240, 243-44, 230 A.2d 532 (App.Div.1967) (expert testimony required to prove causation between accident and subjective complaints of pain); Amaechi v. Clark, 268 N.J.Super. 186, 192-93, 632 A.2d 1281 (Law Div.1993) (in the case of "soft tissue" injuries, such as sprain or strain to the cervical and lumbar areas, expert medical testimony necessary).
Simply put, defendant's position is that the outcome of the lawsuit hinged upon which expert the jury believed, Dr. David or Dr. Rachlin; that given the crucial nature of the experts' testimony, defendant was entitled to present the jury with her expert's qualifications without being bound by plaintiff's offer to stipulate to those qualifications. We agree.
While the trial judge must determine whether the expert's training and experience are sufficient to permit the expert to state an opinion, it remains the jury's function to determine the worth of that opinion. Sanzari v. Rosenfeld, 34 N.J. 128, 138, 167 A.2d 625 (1961). "It is for the jury to determine the credibility, weight and probative value of the expert's testimony. . . ." Rubanick v. Witco Chem. Corp., 242 N.J.Super. 36, 48, 576 A.2d 4 (App.Div.1990), modified and remanded by 125 N.J. 421, 593 A.2d 733 (1991). "Deficiencies in the qualification of an expert is a matter to be weighed by the jury." Ibid. An "expert's skill or knowledge go to the weight to be accorded the expert testimony." Waldorf v. Shuta, 142 F.3d 601, 627 (3d Cir.1998); see also Carbone v. Warburton, 11 N.J. 418, 426, 94 A.2d 680 (1953) (deficiencies in expert's qualifications go to weight given to expert's opinion; sufficient evidence of qualifications permits the expert to testify, "leaving to the jury the determination of its worth"); Angel v. Rand Express Lines, Inc., 66 N.J.Super. 77, 86, 168 A.2d 423 (App.Div. 1961) (expert's qualifications subject to jury's scrutiny).
Here, in denying defendant the right to continue to qualify her expert before the jury, the trial court focused on whether the expert was sufficiently qualified to give opinion testimony, and failed to recognize that the extent of the expert's qualifications were highly probative. Indeed, the court implicitly recognized the importance of the expert's qualifications when it provided the jury with its final instructions, telling the jury that it could "also consider the expert's qualifications" in determining which expert to believe.
Our research has disclosed no authority that requires a party to a lawsuit to accept the other party's stipulation of an expert's credentials. In the context of a criminal trial, a party may not bar the introduction of expert testimony by stipulating that certain facts are not in dispute. See, e.g., State v. Kelly, 97 N.J. 178, 202 n. 11, 478 A.2d 364 (1984). So too here, the trial court should not have required defendant to effectively stipulate to its own expert's *1087 credentials. While defendant had a limited opportunity to explore her expert's qualifications in front of the jury, that opportunity was curtailed by the judge.
On appeal, defendant suggests that judge's ruling precluded trial counsel from bringing to the jury's attention,
the details or import of Dr. Rachlin's board certification in orthopedic surgery and rehabilitation . . . the details of the "board certification" process . . . Dr. Rachlin['s] . . . past experience as an orthopedic surgeon, the nature of his surgical practice, his knowledge, from a surgical [perspective], of the conditions claimed by plaintiff, and his familiarity with studies relating to the incidence of disc bulges in the general population, as well as his experience, as an orthopedic surgeon, in reading MRIs for diagnosis and treatment of patients, including surgical candidates.
In addition, defendant claims that Dr. Rachlin should have been permitted to inform the jury about the work he performs in third world countries, and his work at several clinics and New York hospitals providing medical treatment to patients otherwise unable to afford medical care.
We agree that defendant was entitled to present the jury with this evidence. This case typified the proverbial battle of the experts. If the jury believed Dr. David, plaintiff would have proved that he sustained a permanent injury as a result of the accident. If the jury gave more weight to Dr. Rachlin's testimony than to Dr. David's, the jury would have found that plaintiff's injuries pre-existed the accident or were not permanent.
The importance of defendant's expert's testimony is brought to bear by the record. Dr. David was not an orthopedic surgeon, while Dr. Rachlin is board certified in that area of medicine as well as in other disciplines. It was therefore in defendant's interest to allow the jury to hear about the board certification process, as well as Dr. Rachlin's experience in orthopedics. Defense counsel was not given this opportunity. Instead, after plaintiff's counsel's offer to stipulate cut short the defense voir dire of Dr. Rachlin, the judge intervened, and qualified Dr. Rachlin as an expert. That ruling was a mistaken exercise of discretion. It simply ignored defendant's right to have the jury hear her expert's qualifications.
Plaintiff's counsel's attack on the defense case was primarily directed at Dr. Rachlin. On cross-examination of Dr. Rachlin, plaintiff's counsel honed in, as he was entitled to do, on Dr. Rachlin's history of testifying primarily for defendants. Counsel also appropriately questioned Dr. Rachlin about his professional fees for examining plaintiff, preparing reports and testifying in court. See 1 McCormick on Evidence § 13, at 85 (Broun ed., 6th Ed.2006). Plaintiff's counsel emphasized those points in his closing, claiming Dr. Rachlin was "a hired gun." With defendant's expert as the focus of plaintiff's arguments, it was incumbent upon the trial court to make sure that defendant was provided with a fair opportunity to present a complete picture of her expert's qualifications to the jury. That did not happen.
In denying defendant's motion for a new trial, the judge indicated that she limited Dr. Rachlin's testimony concerning his qualifications out of time considerations. The judge said, in part, "the basis [for limiting Dr. Rachlin's voir dire] was how time consuming it was and that Dr. Rachlin had been in this courtroom more than once. . . ." While a trial judge may limit the interrogation of a witness and presentation of evidence to "avoid needless consumption of time," N.J.R.E. 611(a)(2), time constraints should not deprive a party of a fair opportunity to present its complete case to the jury, especially in a short *1088 trial like this one, where the limitations were placed on the only defense witness. We fail to see how allowing defense counsel to complete the qualification of her expert would have significantly prolonged the trial. If the judge had concerns about how long the additional voir dire would take, she could have asked counsel for a proffer, and then limited the time to complete the voir dire if that action was warranted.
We also take issue with the trial judge's remarks, in front of the jury, that Dr. Rachlin "has been here before." Though this remark could have been construed by the jury as placing Dr. Rachlin in a positive light, it may also have been interpreted negatively, causing the jury to think the doctor was more of a professional witness than a physician. Undoubtedly an expert's multiple appearances in court are fair game for cross-examination; nevertheless, a trial judge should not make remarks that may lend weight to a party's argument that the expert is no more than a hired gun. A court's comments concerning a witness are certainly apt to have more weight with a jury than counsel's. See State v. Meneses, 219 N.J.Super. 483, 488, 530 A.2d 824 (App.Div.1987) ("[A]n unwarranted comment by the judge can be as prejudicial, or more harmful, than one by the prosecutor."), certif. denied, 110 N.J. 156, 540 A.2d 160 (1988).
Furthermore, that the doctor had previously appeared before the trial judge was irrelevant to the judge's function in qualifying the doctor as an expert. In the absence of a stipulation by all parties, that determination is required to be made on the record before the court. While here, the judge may have had prior experience with the expert, it is likely that the jurors were not aware of Dr. Rachlin or his qualifications prior to the trial; if they were, they may not have survived the jury selection process.
In sum, we conclude that the failure to permit defense counsel to fully qualify her expert before the jury, in conjunction with the trial court's remarks, require a new trial.

III.
Our second reason for requiring a new trial is the failure of the court to charge the jury that plaintiff's claim did not include a request for medical expenses. Plaintiff offered no evidence of medical expenses during trial, but he did testify that he had received medical treatment. During the charge conference, defense counsel requested that the court instruct the jury that it could not consider plaintiff's medical expenses in arriving at its verdict for noneconomic damages.[3] The judge declined to do so.
A claim for personal injury protection benefits is excluded from a civil suit by the injured party. Roig v. Kelsey, 135 N.J. 500, 513, 641 A.2d 248 (1994). "[T]estimony as to the amount of lost wages and medical expenses collectible or paid as PIP benefits . . . is not admissible in evidence." Clifford v. Opdyke, 156 N.J.Super. 208, 213, 383 A.2d 749 (App. Div.1978) (citing N.J.S.A. 39:6A-12). Nevertheless, the judge must instruct the jury that the plaintiff is not entitled to medical expenses as an element of damages even when the plaintiff does not offer proof of those expenses. N.J.S.A. 39:6A-12 requires such an instruction. In part, the statute says:

The court shall instruct the jury that, in arriving at a verdict as to the amount *1089 of the damages for noneconomic loss to be recovered by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection [PIP] coverage . . . nor shall they speculate as to the amount of benefits paid or payable by a health insurer, health maintenance organization or governmental agency. . . .
[N.J.S.A. 39:6A-12 (emphasis added).]
The Supreme Court has promulgated a model charge to provide the appropriate instruction to the jury. It states: "The plaintiff's claim in this case does not include any claims for medical expenses. Therefore, in determining the reasonable amount of damages due to plaintiff, you shall not speculate about the medical expenses plaintiff may have had." Model Jury Charge (Civil), 6.11B "Medical Expenses  No-fault" (1996). In the absence of this charge, the jury might speculate about a plaintiff's medical expenses in arriving at a damages verdict. While the trial court here did not believe it was appropriate to give a medical expense charge in the absence of plaintiff's request for medical expenses, we conclude that it is exactly under those circumstances when this charge must be given. Because the judge failed to give the charge, a new trial is warranted.

IV.
In that we are ordering a new trial, we do not address defendant's argument that the verdict was against the weight of the evidence, that the trial judge's body language lent credence to plaintiff's expert's testimony, or that the trial judge abused her discretion in barring cross-examination of plaintiff with regard to his travel arrangements to and from his doctor's office. If the latter issue is raised in a second trial, the court can address it in the context of the evidence of record at that time.

V.
Finally, because it has broad implications, we address defendant's claim that in a verbal threshold trial, the jury, in awarding damages, may only consider those injuries enumerated in N.J.S.A. 39:6A-8a. Defendant argues that because the evidence did not show that each of the injuries plaintiff claims to have suffered in the automobile accident were permanent, his nonpermanent injuries should have been parsed out and the jury instructed not to consider them in arriving at its verdict. Defendant relies on an unpublished opinion of this court for authority.[4]
To the extent that the case stands for the proposition that the jury may only consider the injuries listed in N.J.S.A. 39:6A-8a in its determination of noneconomic damages, we disagree with its holding. AICRA provides that a tortfeasor is exempted from liability for a plaintiff's noneconomic loss unless the plaintiff has sustained certain injuries. N.J.S.A. 39:6A-8a. Said another way, it establishes a threshold for an injured person to sue for noneconomic damages. Once that threshold is met, the statute does not limit a plaintiff's recovery only to the statute's enumerated categories of injuries  all of a plaintiff's injuries proximately caused by the accident may be considered by the jury in its determination of noneconomic damages. As we have previously explained,
[o]ur [verbal threshold] statute exempts tortfeasors from suit for noneconomic loss unless a tort claimant has sustained "a" personal injury which falls within the nine enumerated types of injury delineated *1090 in [N.J.S.A. 39:6A-8a]. The use of the word "a" clearly reflects a legislative intent that a singular injury meeting the tort threshold will permit a claimant to sue for noneconomic loss causally related to all injuries sustained in an automobile accident.
[Puso v. Kenyon, 272 N.J.Super. 280, 293, 639 A.2d 1120 (App.Div.1994).]
Though we arrived at this conclusion in evaluating the 1988 verbal threshold statute, which preexisted AICRA, see L. 1988, c. 119, § 6, it continues to be applicable here. Like its predecessor, AICRA permits losses for noneconomic damages if the injured person has sustained "a" bodily injury that falls into one of the enumerated categories. N.J.S.A. 39:6A-8a. In that the Legislature was aware of the court's interpretation of N.J.S.A. 39:6A-8a at the time it enacted AICRA, and nevertheless continued to use the same statutory language, we conclude that it did not intend to contravene our conclusion in Puso, supra, that once the threshold is met, an injured plaintiff may recover noneconomic damages based on all of the injuries the plaintiff suffered in the accident. See Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227, 638 A.2d 1301 (1994) (Legislature is presumed to be familiar with "existing judicial statutory interpretations"); Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969) ("[T]he Legislature is thoroughly conversant with . . . judicial construction of its statutes.").
This point is buttressed by the provision in AICRA that requires a plaintiff "to satisfy the tort option provisions" of the statute by supplying a physician's certification within sixty days following defendant's answer to the complaint. N.J.S.A. 39:6A-8a. The certification must state that the plaintiff sustained "an" injury described in the statute. Ibid. Again, it refers to a singular injury as necessary to meet the threshold. It does not require a certification for all injuries for which a plaintiff seeks to recover noneconomic damages.
Applying these principles here, the trial judge properly charged the jury on the issue of noneconomic damages by the use of Model Charge 6.11F. That charge reads, in part,
A plaintiff who is awarded a verdict is entitled to fair and reasonable compensation for any permanent or temporary injury resulting in disability to or impairment of his/her faculties, health, or ability to participate in activities, as a proximate result of the defendant's negligence (or other wrongdoing).
[Model Jury Charge (Civil), 6.11F "Disability, Impairment, Loss of the Enjoyment of Life, Pain and Suffering" (1996) (emphasis added).]
The charge was consistent with an injured party's ability to recover for all noneconomic damage sustained as a result of an automobile accident, both permanent and temporary, so long as one of the enumerated injuries has been met to bring the lawsuit in the first instance.
The final judgment is reversed and the case is remanded for a new trial consistent with this opinion.
Reversed and remanded.
NOTES
[1] Plaintiff Elizabeth Rosario has a per quod claim; all references in this opinion to plaintiff are to Espinal. Defendant Marino Arias was the owner of the car driven by defendant Kolias; our references here to defendant are to Kolias. While named as a defendant, the Hanover Insurance Company did not appear in the action.
[2] Defense counsel on appeal was not trial counsel.
[3] The defense also asked for a charge that plaintiff was not seeking lost wages. The failure to provide that charge was not an abuse of discretion in the context of the trial proofs.
[4] Unpublished opinions do not constitute precedent, and, subject to limited exceptions that are not applicable here, shall not be cited by a court. R. 1:36-3.