54 N.J. Super. 25 (1959)
148 A.2d 199
SIDNEY J. MEISTRICH, PLAINTIFF-APPELLANT,
v.
CASINO ARENA ATTRACTIONS, INC., A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1958.
Decided January 26, 1959.
*26 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Robert V. Carton argued the cause for plaintiff-appellant (Messrs. Durand, Ivins & Carton, attorneys; Mr. Robert V. Carton, of counsel).
*27 Mr. Solomon Lautman argued the cause for defendant-respondent.
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from a County Court, Law Division, judgment entered on a jury's verdict of no cause of action and from a denial of a motion for a new trial.
On November 23, 1954, plaintiff was an invited guest at defendant's "pre-opening" party at defendant's new ice skating rink. Shortly after 9 P.M. William Rediker, one of the defendant's officers, told plaintiff that there would be an ice skating show later stating, "Well, we can't do it now because the ice isn't ready." He pointed to and showed plaintiff a man who was spraying water with a hose up and down the rink, slowly, apparently to make the ice. About 15 to 20 minutes later Joseph Rediker, another of defendant's officers, came up to the plaintiff and a group of about eight to ten guests and said, "If any of you would like to go out skating, go ahead out on the rink and you go over to the booth over there and they will give you skates." One of the group asked: "Joe, is it ready for skating?" Mr. Rediker said, "Oh, sure it is ready. See, my wife is out there and my children are out there."
Plaintiff did not go onto the ice until one-half hour to one hour after William Rediker's statement that the ice was not ready, but it was after Joseph Rediker's assurances that the ice was ready. Plaintiff and a Mrs. Lee skated together cross-handed. They made about three circuits of the rink, skating for about ten minutes. Plaintiff testified to a slight difficulty in maintaining footing while making turns but since they were skating slowly they did not have much trouble. While on the straightaway portion of the rink, Mrs. Lee fell, and plaintiff, to avoid "cutting her to ribbons," swung to the left and his skates went out from under him in a sideways direction causing him to fall and injure himself. He stated that there was no gripping of the skates to the ice when he made the left turn.
*28 Plaintiff submitted in evidence the depositions of an out-of-state expert on the designing and engineering of ice-skating rinks and recreational facilities. The witness stated that he had supervised the construction of defendant's ice skating rink. With reference to the night in question he stated that the rink was not actually completed; that there was various work to be performed by painters, carpenters, other various trades in the actual readying of the rink for the official opening, which was not even completed after the public opening; that mechanically, as to the refrigeration equipment, the installation was complete; and that although they were making ice on the night of the accident, they had not completely finished making ice because of the various technical difficulties which caused them to be behind the schedule in the sense of not being absolutely and completely finished in this work. He also stated that on the day in question, November 23, they sprayed water on the ice by means of a hose, that the spraying went on in the early morning, during the entire day, and not only up to the time of the party but as well during the party. He stated: "To the best of my knowledge, the rink was still being worked upon by myself and other employees of the Casino who had been hired to attend the ice. We were constantly spraying as we were more or less looking for a deadline of the following night, not particularly worrying about the so-called press party."
When asked what was the normal thickness of the layer of ice that should be carried over defendant's ice rink cement platform, he answered that where the general public is admitted for skating, the required thickness would be at least a minimum of one inch and preferably an inch to an inch and a quarter to an inch and a half. He stated that the ice was half an inch to three-quarters of an inch thick on the floor during the so-called party; that that thickness was less than the required normal amount. Moreover, because the concrete and the ice on the cement floor of the rink were extremely cold, the ice became extremely hard. Additionally, because they were trying to let the ice absorb *29 as much water as possible to get the desired required thickness, the ice was much harder than it would be under public skating circumstances. He explained this as follows:
"* * * When ice is extremely hard, it is harder than it would normally be used for public skating, it is extremely brittle and can be broken and holes put in the ice under circumstances that wouldn't ordinarily happen if the ice was warmer. This particular night in question there were holes in the ice due to the facts I have just mentioned. This due to the fact that there were people skating on the ice who had been invited to the opening."
In his opinion the ice was not in safe condition for skaters of ordinary ability. He explained the basis of his opinion that the ice would be hazardous for an ordinary skater as follows:
"The ice being held at a colder temperature than would ordinarily be held for skating, public skating, would make the ice extremely hard and brittle so that when the person, a person who is not extremely agile or proficient, who had sufficient skating ability to realize the fact that the ice is extremely hard, would consequently cause holes to appear in the ice or chips of ice to crack out due to the fact that as they stroke they push on one foot and the action of the weight would cause a crack or a chip or something to appear on the ice because of its colder temperature."
As we read the rest of his testimony  although admittedly at times confusing and contradictory  the jury could have found from its totality that defendant had invited persons who it knew were ordinary skaters to use an unsafe ice skating rink, but there would still remain the question of whether any such negligence of defendant was the proximate cause of plaintiff's fall, there being no testimony of any holes, cracks or chips in the ice at the location of plaintiff's fall.
Defendant rested at the close of plaintiff's case without making either a motion for involuntary dismissal (R.R. 4:42-2(b)) or for judgment of dismissal at the close of the case (R.R. 4:51). At oral argument respondent's counsel stated that he did not do either because he felt plaintiff had proved a prima facie case. In view of defendant's *30 position, we do not consider the question whether or not on this record plaintiff had proved a prima facie case. But see, VanDerbeek v. Conlon, 41 N.J. Super. 574, 580 (App. Div. 1956). Moreover, as this was not raised on appeal, we do not consider the question and express no view with respect to it. Cloyes v. Delaware Tp., 23 N.J. 324, 336-337 (1957).
The questions presented on this appeal are: (1) Was the trial court's charge erroneous in respect to (a) the jury's consideration of the fact that defendant did not produce any evidence?; (b) the charge of assumption of risk; (c) the charge as to plaintiff's knowledge of the condition of the ice; (d) the charge as to intervening cause; (e) the charge as to contributory negligence; (f) the charge as to the burden of proof; and (g) the charge that there is a presumption against negligence?; and (2) should a new trial have been granted?
Appellant contends that the trial court erred in instructing the jury as follows:
"Ladies and gentlemen, this has been a case somewhat different than probably those of you have heard during your term of service because there has been no evidence adduced affirmatively on the part of the defendant. Now, that fact alone should not enter or may I say circumscribe or guide your decision in this matter. Because the determination as to the method of trial by respective counsel is within their sole province. And the law which I am going to give you will be applied by you to the facts which have been introduced in evidence, because facts may be proven by adverse witnesses through direct examination or cross-examination, just as well as by the introduction or swearing of other witnesses."

* * * * * * * *
"Now, of course, you only have the witnesses on one side, so it isn't a question of a production of witnesses, but the evidence that is obtained or produced from the witnesses that have been sworn and have given testimony in the case. In other words, the evidence obtained by the plaintiff as against the evidence obtained by the defendant. Of course, there is testimony of certain facts which could have been controverted by the production of evidence to the contrary. You would have a right to believe that if those witnesses were produced, that they would not have been able to testify to the contrary." (Emphasis added.)
*31 Plaintiff's reasoning is that any time a defendant rests at the close of a plaintiff's case, he is subject to adverse inferences because of failure to call any witness. But plaintiff has pointed out no specific witness that defendant has failed to call to the stand, nor any specific evidence that has not been introduced. In Michaels v. Brookchester, Inc., 26 N.J. 379, 391 (1958), two specific employees of the defendant were involved and defendant failed to produce them as witnesses. In Series Publishers, Inc. v. Greene, 9 N.J. Super. 166, 170 (App. Div. 1950), a specific employee who could have identified a certain sample was not produced. The court said: "A judge who is the trier of facts may, like a jury, attribute significance to the failure of a party to call a witness who would normally be a material witness for such party." (Emphasis supplied.) It is true that more than a single witness may be involved but the rule only pertains to specifically identifiable witnesses who could testify to specifically identifiable facts. Pertinent is this rationale of the rule taken from O'Neil v. Bilotta, 18 N.J. Super. 82, 86 (App. Div. 1952), affirmed on opinion 10 N.J. 308 (1952):
"As Dean Wigmore points out, when the inference is permitted it is based not on the bare fact that a particular person is not produced as a witness by a party, but on his non-production, when it would be natural for the party to produce the witness if the facts known by him had been favorable. To meet the requirement `when it would be natural for the party to produce the witness,' it must appear that the person was within the power of the party to produce. Lack of power to produce may be due to the person's absence from the jurisdiction, or to his illness, or to other circumstances. Further, no inference is allowable when the person in question is equally available to both parties." (Emphasis added.)
Again, dealing with specific witnesses and pertaining to specific testimony is the opinion in Jorgenson v. Pennsylvania Railroad Co., 38 N.J. Super. 317, 339 (App. Div. 1955), certification denied 20 N.J. 308 (1956), where the court observed:
"* * * Ulich, who made the complaint, and the officers who accompanied him at the time, were in court but were never called. *32 The surprising failure to call these persons as witnesses would justify an inference by the jury that they were not asked to be sworn because their testimony would have been unfavorable to the defendant."
The rule deals with specific potential witnesses who could obviously counter certain specific testimony if it were not so. But the rule finds no application in this case because of a failure to produce any witness or any testimony. We note in passing that if the charge was unfair, it was probably unfair to defendant and not to plaintiff. See emphasized portion of the charge as stated above.
Plaintiff contends that reversible error was committed in the charge on the doctrine of assumption of risk. The recorded charge is confusing and an unintelligible discussion of the rule of proximate cause with the rule of assumption of risk. Later there was intermingled a discussion of assumption of risk with contributory negligence without a successful explanation of the differences between the two doctrines. We note that contributory negligence involves some breach of duty on the part of a plaintiff. His actions are such as to constitute a failure to use such care for his safety as the ordinarily prudent man in similar circumstances would use. On the other hand, assumption of risk may involve no fault or negligence, but rather entails the undertaking of a risk of a known danger. Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 607 (1953). We agree with plaintiff that the end result as deduced from this record was a most confusing and unintelligible charge on assumption of risk.
Thus, even though the jury brought in a verdict in the form of the statement that, "We find that the defendant was not guilty of any negligence"; and even though such a verdict might have been intended to mean that since defendant was not guilty of any negligence, it was therefore not necessary for the jury to consider whether or not defendant had carried the burden of proving plaintiff's assumption of risk, we hold that the recorded charge concerning assumption of risk was not clearly and understandably explained *33 to the jury and might well have misled the jury. Such explanation is necessary so that a jury, unlearned in law, might comprehensively appreciate the principle involved and apply the facts to it. Ristan v. Frantzen, 14 N.J. 455, 461 (1954).
The court's charge as to plaintiff's knowledge of the hazardous condition of the ice was part of a standard assumption of risk charge. The court properly stated:
"And, of course, if he has assumed the risk, then, of course, that would bar his recovery. But I charge you that one is not chargeable with assumption of risk unless it appears that he realized the imminence of the hazard or reasonably should have realized it as an ordinary prudent person would have realized it under the circumstances, and nonetheless takes the risk. To charge a plaintiff with assumption of risk, it must appear that he knew or ought to have known and comprehended the peril to which he had been exposed. And having such knowledge and comprehension, continues of his own volition to subject himself to that peril."
The charge as to intervening cause was proper. In Hellstern v. Smelowitz, 17 N.J. Super. 366, 373 (App. Div. 1952) we said:
"The intervening cause which operates to bar a plaintiff's recovery in a negligence action must be a culpable and efficient cause and one which destroys the efficient causal connection between the negligent act or omission of the defendant and the injury or loss."
The court pointed out that if the jury found Mrs. Lee's fall to be an intervening cause, it must also find, in order to excuse defendant, that the intervening cause was either a superseding or solely responsible cause. The court stated that it is a superseding cause if it alone, without defendant's negligence contributing in the slightest degree, produces the injury. As we read this part of the charge, the trial court was also saying that a tortfeasor is not relieved from liability from his negligence by the intervention of the acts of third persons where such acts were the natural and probable results of the original negligent act. This is in line with the rule *34 and its rationale as stated in Menth v. Breeze Corporation, Inc., 4 N.J. 428, 441-442 (1950):
"* * * The theory being that the original negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated so that the negligence can be regarded as a concurrent cause of the injury inflicted. One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof although the act of a third person may have contributed to the final result. The law of negligence recognizes that there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury."
We find no error in this part of the charge. Cloyes v. Delaware Tp., 23 N.J. 324, 336 (1957).
Plaintiff argues that the court erred in submitting to the jury the issue of contributory negligence because there was no evidence of it in the case. We agree with plaintiff. Our examination of the record reveals no evidence from which a jury could have bottomed a finding that plaintiff was guilty of contributory negligence. In the absence of any such evidence, even though the charge was correct as a matter of pure law, it was error to submit the issue to the jury. Orbanus v. Seder, 48 N.J. Super. 512, 517 (App. Div. 1957).
The court charged the jury that the plaintiff had the burden of proving "to your satisfaction by a preponderance of the evidence that the defendant was negligent." Plaintiff argues that the words "to your satisfaction" placed a higher burden on plaintiff than is required and also misled the jury. This argument is without merit. Had the court said that negligence must be proved to the jury's satisfaction, omitting the phrase "by a preponderance of the evidence," it would clearly have been error. As we read this statement, all that the trial court here said is that the jury must be satisfied that plaintiff has proved by a preponderance of the evidence that defendant was negligent. Moreover, the court very precisely defined preponderance of the evidence in other parts of the charge. The charge on this issue taken in its entirety presented the law fairly and clearly, so that the jury could *35 not be thought reasonably to have been misled by the instructions. Davidson v. Fornicola, 38 N.J. Super. 365, 370 (App. Div. 1955), certification denied 20 N.J. 467 (1956); Simons v. Lee, 117 N.J.L. 370, 374 (E. & A. 1937).
Plaintiff next argues that the court erroneously charged that there is a presumption against negligence. No exception was taken by plaintiff to this part of the charge. On appeal, plaintiff contends that this charge is misleading and improper, and creates in the minds of the jury the concept that the presumption against negligence is something which carries weight in their deliberations. Plaintiff concedes that there are many decisions in which may be found a statement that there is a presumption against negligence. But plaintiff submits that it is error to charge a jury that there is a presumption against negligence without explaining to them that this presumption does not carry weight with them in the jury room, that it does not have probative value in favor of the defendant, and that it is not to be considered in the proofs as having weight on the scale on the defendant's side.
In Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139-140 (1951) the court stated:
"* * * negligence is a fact which must be shown; it will not be presumed. Indeed there is a presumption against it and the burden of proving the charge of negligence * * * is upon the plaintiff and must be sustained by proof of circumstances from which defendant's want of due care is a legitimate inference. It is a substantial right of defendant that plaintiff be required to bear this burden."
Plaintiff misconceives the application of this presumption. All that the trial court was saying was that as a matter of law defendant is presumed not to have been guilty of negligence but that if plaintiff submits proof of defendant's negligence, i.e., if plaintiff's evidence shows that defendant was negligent, the presumption disappears. Kirschbaum v. Metropolitan Life Ins. Co., 133 N.J.L. 5, 8-9 (E. & A. 1945); Flanagan v. Equitable-Life Assurance Society of United States, 14 N.J. 309, 312 (1954). The presumption *36 in the absence of evidence to the contrary requires the court to decide the issue of negligence and not leave it to the jury. Once such contrary evidence is introduced, the occasion for the presumption, as a rule of law, is gone, and it ceases "to exist `like bats of law flitting in the twilight, but disappearing in the sunshine of actual facts.'" Prosser on Torts, 198 (2d ed. 1955).
We find it unnecessary to deal with any other issue in view of our determinations that reversible errors were committed in the above stated respects.
Reversed; costs on this appeal to abide the outcome of the retrial.