SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Sofia T. Torres v. Javier Pabon and Suburban Disposal, Inc.** (A-116-13) (074307)

**Argued November 10, 2015 -- Decided June 1, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, arising from a judgment in plaintiff's favor in a motor vehicle negligence case, the Court considers defendants' contention that the trial court committed several errors that mandate reversal of the judgment and a new trial.

On August 30, 2007, before starting his daily garbage collection route, defendant Javier Pabon (Pabon) inspected the truck assigned to him by his employer, Suburban Disposal, Inc. (Suburban). Pabon noticed that some of the truck's rear lights were covered with debris that could not be removed by wiping with a cloth. At 4:30 a.m., Pabon commenced his route on the eastbound lanes of Route 46 in Fairfield. Pabon testified that his truck was traveling at forty to forty-five miles per hour when he entered a construction area and was directed by a sign to merge left. He stated that he slowed his vehicle as he merged, but that he was unaware of plaintiff's vehicle until it collided with his truck. Plaintiff testified that she was driving her car eastbound on Route 46, at a speed of forty-five to fifty miles per hour. She stated that as she merged left, she saw a "dark silhouette" of an object ahead and that she attempted to brake when she realized that the object was a truck, but her car crashed into the back of the truck.

Plaintiff filed a complaint against Pabon and Suburban. She alleged that defendants were negligent and sought compensatory damages. Defendants denied plaintiff's allegations and, pursuant to the Comparative Negligence Act, asserted plaintiff's own negligence as an affirmative defense. Defendants' counsel was informed that Pabon had left the country and could not be deposed. Plaintiff moved for an order barring Pabon from testifying at trial and for an extension of the discovery end date. Prior to the return date of that motion, Pabon returned to the United States and was deposed. Unaware of that development, a motion judge entered an order granting plaintiff's motion to bar Pabon from testifying at trial, but denying plaintiff's request to extend discovery.

On May 16, 2011, more than a year after the trial court denied an extension of discovery and approximately two-and-a-half weeks before the trial date, plaintiff served a set of requests for admissions asking that defendants admit or deny various medical opinions submitted by Thomas E. Helbig, M.D., defendants' expert orthopedist. When trial began on June 6, 2011, the thirty-day period for defendants' response to plaintiff's requests for admissions, as prescribed by Rule 4:22-1, had not yet expired. Defendants took the position that the requests for admissions were untimely, and did not serve responses to those requests.

In his opening statement, plaintiff's counsel referred to admissions made by Pabon at his deposition. Defendants objected, citing the pretrial order barring Pabon from testifying. Pabon did not testify, but the trial court permitted plaintiff to read portions of his deposition testimony into evidence. Pursuant to State v. Clawans, 38 N.J. 162 (1962), the court instructed the jury to consider drawing an adverse inference against defendants from Pabon's failure to testify. Defendants declined to present Dr. Helbig's testimony. Plaintiff's counsel, however, asserted that he had the right to read into the record plaintiff's requests for admissions. Defendants' counsel objected. The trial court permitted plaintiff's counsel to read those requests to the jury and issued a second Clawans charge authorizing the jury to draw an adverse inference against defendants because they decided not to call their expert as a witness.

During her direct examination, plaintiff volunteered that she had significant medical bills and lacked the resources to pay them. Defendants' counsel objected. The trial court did not strike the testimony or instruct the jury to disregard it. In addition, the trial court misidentified defendant as the party who was subject to the duty to follow another vehicle at a safe distance, despite the undisputed evidence that plaintiff's vehicle was traveling behind the truck driven by Pabon.

The jury returned a verdict in plaintiff's favor, allocating fifty-five percent of the fault to defendants and forty-five percent to plaintiff. The jury awarded $4.5 million in damages. The trial court molded the verdict and entered judgment for plaintiff in the amount of $2,735,455.08. Defendants appealed, claiming that the trial court erred by issuing adverse interest charges as to Pabon and Dr. Helbig; by allowing plaintiff to read to the jury the requests for admissions; by failing to instruct the jury that plaintiff was not entitled to medical expenses; and, by misidentifying defendant as the party who was subject to the duty to follow another vehicle at a safe distance.

The Appellate Division affirmed, concluding that there was no abuse of discretion and that the errors defendants complained of were harmless in light of the evidence. The Supreme Court granted defendants' petition for certification. 218 N.J. 531 (2014).

**HELD:** The trial court's five erroneous determinations, affecting both the issue of liability and the determination of damages, gave rise to cumulative error warranting a new trial.

1. An adverse inference charge may be warranted when a party's failure to present evidence "raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." State v. Clawans, supra, 38 N.J. at 170. A jury may draw an adverse inference only if it appears "that the person was within the power of the party to produce and that his testimony would have been superior to that already utilized in respect to the fact to be proved." Id. at 171. In State v. Hill, this Court prescribed a four-pronged test for an adverse interest charge. 199 N.J. 545, 561-62 (2009). Given its potentially dispositive impact on the jury's determination – and prejudicial impact of an inappropriate adverse inference – the adverse inference charge is only given when all of the Hill factors are found to warrant the charge. Id. at 561. In this case, had the trial court undertaken the thorough analysis mandated by Hill, it would have denied plaintiff's request for the Clawans charge concerning Pabon. (pp. 14-18)

2. Plaintiff's requests for admissions were untimely and substantively improper, and defendants had no obligation to respond to them. Plaintiff did not seek admissions from defendants regarding facts within defendants' knowledge or attempt to authenticate documents. Instead, she sought defendants' admissions to selected portions of Dr. Helbig's expert report. The requests for admissions did not conform to Rule 4:22-1 and, accordingly, the trial court's decision to allow plaintiff to read them to the jury constituted an abuse of discretion. An appropriate analysis pursuant to Hill, supra, with respect to Dr. Helbig, would have confirmed that no Clawans charge was warranted. (pp. 18-23)

3. Pursuant to N.J.S.A. 39:4-89, "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway." In the form set forth in Model Jury Charge (Civil), § 5.30D(2) "Violation of Traffic Act" (August 1999), the instruction to the jury envisions that the driver following behind another driver at the time of a motor vehicle collision is the defendant, not the plaintiff. Here, however, the driver subject to the duty was plaintiff, not defendant, and the trial court should have ensured that the Model Jury Charge was tailored to reflect that fact. The trial court's charge on this important issue was contradictory and confusing, and constituted error. (pp. 23-25)

4. New Jersey's 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, bars juries from speculating "as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage payable under a standard automobile insurance policy..." In this case, unprompted by her counsel, plaintiff told the jury that she was unable to pay "[h]undreds, thousands of dollars" in medical bills. The trial court erred when it failed to include the medical expenses charge in its jury instructions, thereby permitting the jury to mistakenly assume that the medical expenses described by plaintiff constituted an element of her claim for damages. (pp. 25-30)

5. The trial court's five erroneous determinations gave rise to cumulative error warranting a new trial. The Clawans instruction regarding Pabon suggested to the jury that defendants had concealed potentially dispositive information on defendants' negligence. By allowing plaintiff to read her requests for admissions to the jury, the trial court selectively informed the jury about aspects of Dr. Helbig's opinion that favored plaintiff. In giving a Clawans charge concerning Dr. Helbig, the court suggested that defendants feared the expert's disclosure of adverse evidence. The confusing jury instruction regarding a driver's duty to follow another driver at a safe distance suggested that defendant was subject to a finding of negligence because of a purported violation of the traffic statute. The trial court's failure to give the required charge regarding medical expenses permitted the jury to consider plaintiff's statements about her medical expenses in its calculation of damages. Because of those errors, defendants were not afforded a fair trial on either liability or damages and are entitled to a new trial. (pp. 27-28)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

2

SOFIA T. TORRES,

    Plaintiff-Respondent,

       v.

JAVIER PABON and SUBURBAN
DISPOSAL, INC.,

    Defendants-Appellants.


> Argued November 10, 2015 – Decided June 1, 2016
>
> On certification to the Superior Court, Appellate Division.
>
> Timothy P. Smith argued the cause for appellants (Kinney Lisovicz Reilly & Wolff, attorneys; James P. Lisovicz, of counsel; Mr. Smith, Mr. Lisovicz, and Brooks H. Leonard, on the briefs).
>
> Jean A. Amagsila argued the cause for respondent.
>
> Jonathan W. Miller argued the cause for amicus curiae New Jersey Association for Justice (Locks Law Firm, attorneys; Mr. Miller and Michael A. Galpern, on the brief).

    JUSTICE PATTERSON delivered the opinion of the Court.

    In this appeal, arising from a judgment in plaintiff's favor in a motor vehicle negligence case, we consider defendants' contention that the trial court committed several errors that mandate reversal of the judgment and a new trial.

Plaintiff Sofia Torres alleged that she was seriously injured in a rear-end collision between her car and a garbage truck owned by defendant Suburban Disposal, Inc. (Suburban) and operated by defendant Javier Pabon (Pabon). Plaintiff alleged that, as a result of defendants' negligent maintenance of the truck's taillights, she was unaware that the truck was ahead of her. She contended that Pabon drove negligently, causing the collision. Defendants denied plaintiff's allegations and asserted that plaintiff's negligence caused the accident. The case was tried before a jury, which found both parties negligent but allocated fifty-five percent of the fault to defendants, and awarded a substantial verdict. The Appellate Division affirmed the trial court's judgment.

We conclude that the trial court committed a series of errors during the trial. First, the trial court improperly issued a jury charge pursuant to State v. Clawans, 38 N.J. 162 (1962), directing the jury to consider drawing an adverse inference against defendants from Pabon's failure to testify after plaintiff presented Pabon's deposition testimony to the jury. Second, the trial court permitted plaintiff to read to the jury requests for admissions, served by plaintiff immediately before trial, which improperly sought defendants' admissions to medical opinions offered by one of their expert witnesses. Third, the trial court erroneously issued a second

2

Clawans charge, again authorizing the jury to draw an adverse inference against defendants because they decided not to call their expert as a witness. Fourth, the trial court made significant errors in its jury instruction regarding the duty of a driver to maintain a safe distance behind another driver. Finally, notwithstanding plaintiff's testimony before the jury that she had significant medical bills and lacked the resources to pay them, the trial court failed to instruct the jury that plaintiff was not entitled to medical expenses as an element of damages, in accordance with N.J.S.A. 39:6A-12.

We hold that those five improper rulings, which affected both the determination of liability and the damages award, gave rise to cumulative error warranting a new trial. Accordingly, we reverse the determination of the Appellate Division and remand to the trial court for a new trial.

I.

In the early morning of August 30, 2007, at the Fairfield yard operated by his employer, Suburban, Pabon inspected the truck assigned to him for his daily garbage collection route. According to his deposition testimony, Pabon noticed that although none of the lights on the truck were missing or broken, some of the lower lights at the rear of the truck were covered with debris that could not be removed by wiping the lights with a cloth.

3

At 4:30 a.m., Pabon commenced his route, driving in a fifty-mile-per-hour zone in one of the eastbound lanes of Route 46 in Fairfield.  Pabon testified that his truck was traveling at forty to forty-five miles per hour when he entered a construction area and was directed by a sign to merge to the left.  He stated that he slowed his vehicle by taking his foot off the gas pedal, but did not apply his brakes.  According to Pabon, as his truck merged into the left lane, he did not see any approaching cars, and he was unaware of plaintiff's vehicle until it collided with his truck.

Plaintiff testified that, immediately before the accident, she was driving her Nissan Altima eastbound on Route 46, at a speed of forty-five to fifty miles per hour.  She stated that she saw the sign directing vehicles to merge from the right lane into the left lane.  She recalled that, as she merged to the left, she saw a "dark silhouette" of an object ahead, but could not "make it out" because it was "camouflage[d] with everything around there."  Plaintiff said that when she realized that the object was a truck, she "stomped on [her] brakes," but "[w]ithin one or two seconds, my right side, the driver's side hit into the back of the truck."

Plaintiff filed a complaint against Pabon and Suburban.  She alleged that defendants were negligent and sought compensatory damages.  Defendants denied plaintiff's allegations

4

and asserted plaintiff's own negligence as an affirmative defense, pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.17.

In response to a notice to take Pabon's deposition, defendants' counsel informed plaintiff's counsel that Pabon had left the United States and could not be produced for a deposition. Several months later, plaintiff moved for an order barring Pabon from testifying at trial and for an extension of the discovery end date. Prior to the return date of that motion, Pabon returned to the United States. Plaintiff's counsel conducted Pabon's deposition on November 24, 2009. Apparently uninformed about that development, a motion judge entered an order on December 4, 2009, granting plaintiff's motion to bar Pabon from testifying at trial, but denying plaintiff's request to extend discovery.

During discovery, defendants designated Thomas E. Helbig, M.D., as their expert orthopedist. In his report, Dr. Helbig opined that plaintiff had sustained several fractures, evidently as a result of the August 30, 2007 accident, and that although plaintiff "exhibits excellent alignment of the lower extremities," she "does exhibit persistent pain, weakness and atrophy, particularly in the left leg."

Prior to trial, the trial court considered in limine motions addressing expert opinions. The trial court granted

5

plaintiff's pretrial motion to bar portions of the opinion of defendants' accident reconstruction expert, John Karpovich, regarding the speed of the truck at the time of impact. The court rejected defendants' challenge to the accident reconstruction expert testimony of plaintiff's expert, Walter Suhaka. Before jury selection, the trial court ruled that, plaintiff's treating internist, Peter P. Yonclas, M.D., would be permitted to testify despite plaintiff's late service of a supplemental report by the physician, on the grounds that his report reflected his continued treatment of plaintiff.[1]

On May 16, 2011, more than a year after the trial court denied an extension of discovery and approximately two-and-a-half weeks before the trial date, plaintiff served a set of requests for admissions. The requests for admissions, designated as a "supplemental demand for admissions," did not request that defendants admit or deny factual assertions or authenticate documents. Instead, plaintiff asked that defendants admit or deny various medical opinions that Dr. Helbig had stated in his expert report. When trial began on June 6, 2011, the thirty-day period for defendants' response to plaintiff's requests for admissions, as prescribed by Rule 4:22-

---

[1] In addition to the four expert witnesses who are the subject of this appeal, plaintiff designated an expert orthopedist and a treating physician to testify on her behalf, and defendants designated a neurologist to testify on their behalf.

1, had not yet expired. Defendants took the position that the requests for admissions were untimely, and did not serve responses to those requests.

At the commencement of trial, the trial court and the parties discussed the potential testimony of defendant Pabon, whom defendants had designated as a trial witness in their pretrial submissions. Plaintiff's counsel informed the trial court that defendants were barred by court order from presenting Pabon's testimony at trial, on the ground that they had failed to produce him for a deposition. Defendants' counsel informed the trial court that Pabon had in fact been deposed, and stated that the pretrial order barring his testimony was an error. The trial court declined to rule on the potential testimony of Pabon prior to trial.

In his opening statement, plaintiff's counsel referred to admissions made by Pabon at his deposition. Defendants objected, citing the pretrial order barring Pabon from testifying. Defendants informed the trial court that Pabon would be present at trial, and argued that it would be improper to admit the transcript of Pabon's deposition into evidence. After a colloquy between the trial court and counsel, Pabon's status as a potential trial witness remained unresolved. The trial court, however, permitted plaintiff to read portions of Pabon's deposition testimony into evidence at trial, pursuant to

7

Rule 4:16-1(c). The court reasoned that the deposition contained important information about the condition of the truck at the time of the accident. Pabon was present during portions of the trial, but did not testify.

Plaintiff, who received Personal Injury Protection (PIP) benefits covering hospital and physicians' bills, asserted no claim for medical expenses. Although her counsel properly refrained from inquiring about medical expenses in plaintiff's direct examination, plaintiff volunteered that she was unable to pay her medical bills. She told the jury, "I have no -- no peace of mind, I have no money, I have all these bills, all these hospital bills. How do they want me to pay for a helicopter ride? I have no clue. Hundreds, thousands of dollars." Although defendants' counsel immediately objected, the trial court did not strike the testimony or instruct the jury to disregard it.

Pursuant to the trial court's pretrial rulings, plaintiff was permitted to present her expert testimony without limitation. Although he had conducted no analysis to determine the speed of either vehicle at the time of impact, plaintiff's accident reconstruction expert, Suhaka, was permitted to testify that plaintiff did not have the opportunity to avoid the crash. Plaintiff's expert orthopedist, Dr. Hirsch, was permitted to testify about the impact of plaintiff's injuries on her mental

8

status and employability.  Plaintiff also presented the testimony of Dr. Yonclas and another treating physician.

Defendants called no fact witnesses.  They called two expert witnesses, their expert neurologist and their accident reconstruction expert, Karpovich.  The accident reconstruction expert, barred by the trial court's ruling from estimating the speed of plaintiff's vehicle, testified within the constraints imposed by the court.  Defendants declined to present the testimony of their expert orthopedist, Dr. Helbig.

At the charge conference, plaintiff's counsel claimed that defendants had decided not to call Dr. Helbig to the stand because his report supported opinions stated by plaintiff's expert.  Plaintiff's counsel asserted that he had the right to read into the record plaintiff's requests for admissions, which set forth various opinions stated in Dr. Helbig's report. Defendants' counsel objected, arguing that plaintiff's requests for admissions, to which defendants had not responded in light of their untimely service, could not serve as a substitute for expert testimony.  Although the trial court initially expressed concerns about the fairness of plaintiff's proposed use of her requests for admissions, it permitted plaintiff's counsel to read those requests to the jury.

Also at the charge conference, the trial court decided to instruct the jury that it could draw an adverse inference

9

against defendants because they had not presented the testimony of defendant Pabon or the testimony of their expert, Dr. Helbig. The court did not engage in an analysis of plaintiff's request for the adverse inference charges under Clawans and State v. Hill, 199 N.J. 545 (2009). Instead, the court commented that Pabon was available in court, that defendants had the opportunity to call him to the stand, and that defendants could have also called Dr. Helbig as a witness but did not do so. In summation, plaintiff's counsel emphasized the adverse inference that the jury could draw because defendants had declined to present Dr. Helbig's testimony.

When the trial court gave the jury an instruction based on Model Jury Charge (Civil), § 5.30D(2) "Violation of Traffic Act" (August 1999), pursuant to Dolson v. Anastasia, 55 N.J. 2, 10 (1969), it misidentified defendant as the party who was subject to the duty to follow another vehicle at a safe distance, despite the undisputed evidence that plaintiff's vehicle was traveling behind the truck driven by Pabon before the collision. Defendants' counsel interrupted the trial court's charge to advise the court of its error. Although the trial court promised to "clarify" the charge, it repeated its misstatement that "defendant" was the motorist subject to the duty to follow at a safe distance, and then told the jury that if it found defendant had followed the other vehicle too closely, "the

10

plaintiff is also negligent." The trial court then instructed the jury that it could draw adverse inferences from defendants' failure to call Pabon and Dr. Helbig to the stand.

Notwithstanding plaintiff's testimony regarding her medical bills, the trial court did not charge the jury that it could not include in its damages calculation plaintiff's medical expenses. Defendants did not request such a charge or object to the trial court's failure to address the issue with the jury.

The jury returned a verdict in plaintiff's favor. Pursuant to N.J.S.A. 2A:15-5.2, the jury allocated fifty-five percent of the fault to defendants and forty-five percent of the fault to plaintiff. The jury awarded $4.5 million in damages. The trial court molded the verdict, awarded prejudgment interest and costs, and entered judgment for plaintiff in the amount of $2,735,455.08.

An Appellate Division panel affirmed the trial court's judgment. It held that the trial court's adverse inference charge concerning Pabon was not an abuse of discretion. The panel concluded that the trial court's two rulings regarding defendants' expert, Dr. Helbig -- its determination that plaintiff was permitted to read the requests for admissions to the jury, and its adverse inference charge as to the expert -- constituted harmless error. The panel acknowledged the trial court's confusion of the parties in its jury charge regarding a

11

driver's duty to follow at a safe distance, but held that the charge was not harmful error in light of the evidence presented to the jury regarding the circumstances of the accident. It concluded that the trial court's failure to instruct the jury not to consider plaintiff's medical expenses did not give rise to plain error. The panel rejected defendants' contentions that plaintiff's experts, Suhaka and Dr. Yonclas, were improperly permitted to testify, and that the expert testimony of defendants' expert, Karpovich, was erroneously restricted.

We granted defendants' petition for certification, 218 N.J. 531 (2014), and granted the motion of the New Jersey Association for Justice (NJAJ) to appear as amicus curiae.

II.

Defendants urge the Court to reverse the Appellate Division's judgment and order a new trial. They contend that the trial court's adverse inference charge as to Pabon was not only contrary to the principles of Clawans and Hill, but was fundamentally unfair in light of plaintiff's use of Pabon's deposition testimony at trial. Defendants argue that the trial court also erred in allowing plaintiff to read to the jury untimely and improper requests for admissions regarding the opinions of their orthopedic expert, Dr. Helbig. They assert that the court's error was compounded by its decision to issue a Clawans charge as to Dr. Helbig and add that such a charge is

12

rarely warranted when a party fails to call an expert witness. Defendants contend that the trial court's mistakes in its charge to the jury on a driver's duty to follow at a safe distance, under Dolson, gave rise to reversible error, and that the court's failure to instruct the jury not to consider plaintiff's medical expenses in its calculation of damages constituted plain error. Defendants assert that the cumulative effect of the trial court's errors denied them a fair trial.

Plaintiff counters that the trial court was fair and even-handed in its oversight of this case. She argues that because her counsel would have consented had defendants sought to call Pabon as a trial witness, and Pabon was present in court, the trial court correctly decided to permit the jury to draw an adverse inference from his failure to testify. She asserts that the trial court did not abuse its discretion in admitting her requests for admissions, and that because of defendants' unanticipated decision not to call Dr. Helbig to testify on their behalf, the court properly authorized the jury to draw an adverse inference from the expert's absence. Plaintiff also argues that the trial court's mistakes in its jury instruction on the duty to follow at a safe distance amounted to nothing more than minor semantic errors that did not affect the outcome. She notes that defendants declined to request a charge admonishing the jury not to consider plaintiff's medical

13

expenses in its calculation of damages, and asserts that the trial court's failure to give that charge was not plain error.

Amicus curiae NJAJ urges the Court to remand the matter to the trial court or the Appellate Division for additional consideration of the trial court's Clawans jury instruction regarding Dr. Helbig. In the alternative, NJAJ proposes that the Court affirm the decision of the Appellate Division regarding the trial court's issuance of a Clawans charge concerning Dr. Helbig, on the ground that any error committed by the trial court was harmless.

### III.

### A.

In our review of defendants' claim that the trial court committed cumulative error, we first consider the court's adverse inference charge regarding the failure of defendant Pabon to testify at trial.

An adverse inference charge may be warranted when a party's failure to present evidence "raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." Clawans, supra, 38 N.J. at 170. The jury is instructed that it may draw an adverse inference against the party who would be expected to call the witness, but has declined to do so. See id. at 170-71; Hill, supra, 199 N.J. at 559-61.

14

As this Court stated in Hill, supra, however, the adverse inference instruction "is not invariably available whenever a party does not call a witness who has knowledge of relevant facts." 199 N.J. at 561. The jury is instructed that it may draw an adverse inference from a party's failure to call a witness only if it appears "that the person was within the power of the party to produce and that his testimony would have been superior to that already utilized in respect to the fact to be proved." Clawans, supra, 38 N.J. at 171 (citing Meistrich v. Casino Arena Attractions, Inc., 54 N.J. Super. 25, 31 (App. Div.), modified 31 N.J. 44 (1959); O'Neil v. Bilotta, 18 N.J. Super. 85, 86 (App. Div.), aff'd, 10 N.J. 308 (1952)). The adverse inference "is always open to destruction by explanation of circumstances which make some other hypothesis a more natural one than the party's fear of exposure." Ibid.

In Hill, supra, the Court set forth procedures for a trial court to follow when a party requests an adverse inference charge or states its intent to address in summation the absence of a witness. 199 N.J. at 560-62. The party seeking the charge "must notify the opposing party and the judge, outside of the presence of the jury, must state the name of the witness or witnesses not called, and must set forth the basis for the belief that the witness or witnesses have superior knowledge of relevant facts." Id. at 560-61. The trial court must conduct a

15

"dispassionate assessment of the circumstances" of the specific

case.  Id. at 561; see also Washington v. Perez, 219 N.J. 338,

356-57 (2014).  To guide that assessment, the Court in Hill,

supra, prescribed a four-pronged test:

> (1) that the uncalled witness is peculiarly
> within the control or power of only the one
> party, or that there is a special relationship
> between the party and the witness or the party
> has superior knowledge of the identity of the
> witness or of the testimony the witness might
> be expected to give; (2) that the witness is
> available to that party both practically and
> physically; (3) that the testimony of the
> uncalled witness will elucidate relevant and
> critical facts in issue[;] and (4) that such
> testimony appears to be superior to that
> already utilized in respect to the fact to be
> proven.
>
> [199 N.J. at 561-62 (alteration in original)
> (quoting State v. Hickman, 204 N.J. Super.
> 409, 414 (App. Div.), certif. denied, 103
> N.J. 495 (1986)).]

Because the prejudicial impact of an inappropriate adverse

inference charge may be "severe," the case-specific assessment

mandated in Hill serves an essential purpose.  Id. at 562.  As

the Court observed, "it is one thing for counsel in his

summation to point to the absence of particular witnesses; it is

quite another when the court puts the weight of its authority

behind such a summation by telling the jury it may draw an

adverse inference from their absence."  Ibid. (quoting Wild v.

Roman, 91 N.J. Super. 410, 415 (App. Div. 1966)).  Given its

potentially dispositive impact on the jury's determination, the

16

adverse inference charge is only given when all of the Hill factors are found to warrant the charge.  Id. at 561; Washington, supra, 219 N.J. at 356.

Had the trial court undertaken the thorough analysis mandated by Hill, it could not have found in plaintiff's favor on all four of the Hill factors, and would have denied plaintiff's request for the Clawans charge concerning Pabon. The record did not support a finding on the first factor identified in Hill, supra:  "that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give[.]"  199 N.J. at 561.  Plaintiff's counsel could have secured Pabon's trial testimony by service of a notice in lieu of subpoena on his counsel, pursuant to Rule 1:9-1, by court order, or by consent.  Moreover, plaintiff's counsel had deposed Pabon and was fully familiar with his testimony.

There was a basis for findings by the trial court in plaintiff's favor on the second Hill factor, "that the witness is available to [defendants] both practically and physically," and the third Hill factor, "that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[.]" 199 N.J. at 561.  However, given plaintiff's affirmative use of

17

Pabon's detailed deposition testimony in her case, there was no support for a finding in plaintiff's favor on the fourth Hill factor, that Pabon's testimony "appears to be superior to that already utilized in respect to the fact to be proven." Ibid. Thus, the circumstances of this case justified findings in plaintiff's favor with respect to only two of the Hill factors, not the mandated four.

By giving the Clawans charge, the court suggested to the jury that Pabon's testimony would have undermined defendants' case and that defendants had sought to conceal that testimony from the jury. Thus, plaintiff not only utilized deposition testimony by Pabon to support her case, but she also had the benefit of a potentially determinative jury charge.

Accordingly, the trial court erred when it gave the jury an adverse inference charge pursuant to Clawans with respect to defendants' decision not to call Pabon to testify at trial.

B.

We next review the trial court's two determinations regarding defendants' orthopedic expert, Dr. Helbig: the court's ruling permitting plaintiff to read to the jury plaintiff's late-served requests for admissions stating Dr. Helbig's opinions, and its Clawans charge based on defendants' decision not to call Dr. Helbig as an expert witness at trial.

18

Requests for admissions are intended "to streamline litigation by 'weeding out items of fact and proof over which there is no dispute, but which are often difficult and expensive to establish by competent evidence[.]'" Hungerford v. Greate Bay Casino Corp., 213 N.J. Super. 398, 404 (App. Div. 1986) (quoting Klimowich v. Klimowich, 86 N.J. Super. 449, 452 (App. Div. 1965)). Rule 4:22-1 authorizes service on an opposing party of "a written request for the admission for purposes of the pending action only, of the truth of any matters of fact within the scope of R. 4:10-2 set forth in the request, including the genuineness of any documents described in the request." The matter set forth in the request is deemed "admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves . . . a written answer or objection addressed to the matter, signed by the party or by the party's attorney[.]" Ibid.

In this case, plaintiff's requests were served long after the close of discovery, so close to the trial date that the thirty-day period to respond did not expire until the trial was well underway. There was no application to the court for leave to serve the requests, much less an order granting such leave. The requests for admission were therefore untimely, and defendants had no obligation to respond to them.

The requests for admissions also were substantively improper. Plaintiff did not seek admissions from defendants regarding facts within defendants' knowledge, or attempt to authenticate documents. Instead, she sought defendants' admissions to selected portions of Dr. Helbig's expert report. The requests for admissions did not conform to Rule 4:22-1. Accordingly, the trial court's decision to authorize plaintiff to read to the jury plaintiff's requests for admissions constituted an abuse of its discretion.

The trial court's error was compounded when it gave the jury an adverse inference charge regarding defendants' decision not to call Dr. Helbig as a witness. Defendants objected to plaintiff's request for a Clawans instruction, noting that giving that charge after allowing plaintiff to read the requests for admissions concerning Dr. Helbig's report would be "piling on." The trial court rejected defendants' argument. Consistent with its approach to the adverse inference issue regarding Pabon, the court gave the instruction without considering the Hill factors as they applied to Dr. Helbig.

Again, had the trial court undertaken an appropriate analysis pursuant to Hill with respect to Dr. Helbig, that inquiry would have confirmed that no Clawans charge was warranted. The first Hill factor, which focuses on one party's exclusive control over, or special relationship with, the

20

witness, weighs against a Clawans charge.  199 N.J. at 561.
Defendants exercised no proprietary right to their expert's
testimony, and plaintiff could have called Dr. Helbig to the
stand.  Washington, supra, 219 N.J. at 365 (noting defendants
did not have exclusive control over physicians designated as
their experts); Fitzgerald v. Stanley Roberts, Inc., 186 N.J.
286, 302 (2006) (holding party may call adversary's expert when
expert was designated as adversary's testifying expert).

The record is inconclusive with respect to the second Hill
factor, which concerns whether Dr. Helbig was "available to
[defendants] both practically and physically."  199 N.J. at 561.
The third consideration identified in Hill, whether Dr. Helbig's
testimony would have "elucidate[d] relevant and critical facts
in issue," also provides no support for an adverse inference
charge.  Ibid.  There is no indication that Dr. Helbig was
uniquely aware of any facts relevant to this case, in light of
plaintiff's examination and treatment by her own medical
witnesses, or that he had information that was withheld from the
expert's report that was served on plaintiff.  Finally, Dr.
Helbig's testimony was not "superior to [testimony] already
utilized in respect to the fact to be proven," for purposes of
the fourth Hill factor.  Ibid.  There is no indication that Dr.
Helbig's testimony would have proven more illuminating than the
opinions of the experts who testified before the jury.  Thus,

21

under a proper <u>Hill</u> analysis, plaintiff's request for an adverse inference charge concerning Dr. Helbig's failure to testify should have been denied.  Moreover, in accordance with <u>Hill</u>, <u>supra</u>, the trial court should have barred plaintiff's counsel from discussing, in summation, Dr. Helbig's absence from the trial.  199 <u>N.J.</u> at 569 n.9.

Indeed, as this Court held after the trial in this case, "a <u>Clawans</u> charge will rarely be warranted when the missing witness is not a fact witness, but an expert."  <u>Washington</u>, <u>supra</u>, 219 <u>N.J.</u> at 364.  By virtue of the expansive expert discovery authorized by our court rules, an expert's opinions and the factual basis for those opinions are likely to be disclosed to the opposing party well in advance of trial.  <u>Id.</u> at 361-62.  Moreover, a party's decision not to call a particular expert witness may reflect strategic considerations having nothing to do with that party's fear of adverse testimony.  <u>Id.</u> at 363-64.  "Thus, when the witness whom a party declines to call at trial is an expert rather than a fact witness, the factors that may necessitate an adverse inference charge addressing the absence of a fact witness are unlikely to be germane."  <u>Id.</u> at 364.

Accordingly, the trial court committed two errors in its response to defendants' decision not to call Dr. Helbig as their expert orthopedist at trial:  it permitted plaintiff to read her untimely and improper requests for admissions to the jury, and

22

it gave the jury an unwarranted and inappropriate <u>Clawans</u> charge.

C.

We next consider the trial court's jury instruction regarding the duty of a driver to maintain a safe distance while following another vehicle.  The Legislature codified that duty in <u>N.J.S.A.</u> 39:4-89:

> The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway.

In <u>Dolson</u>, <u>supra</u>, this Court determined that <u>N.J.S.A.</u> 39:4-89 "merely incorporates the common law standard into the motor vehicle law to authorize penal sanctions for a violation[,]" and that a driver's conduct contravening that standard "<u>is</u> negligence and a jury should be so instructed."  55 <u>N.J.</u> at 10 (emphasis in original); <u>see also</u> <u>Eaton v. Eaton</u>, 119 <u>N.J.</u> 628, 642-43 (1990) (holding where "a statute specifically incorporates a common-law standard of care, a jury finding of a statutory violation constitutes a finding of negligence"). Thus, because <u>N.J.S.A.</u> 39:4-89 imposes a statutory duty of care on a driver following behind another driver, a finding that the driver violated the duty obviates the need for further proof of negligence.  <u>Dolson</u>, <u>supra</u>, 55 <u>N.J.</u> at 10 (citing <u>N.J.S.A.</u> 39:4-89).

23

The statutory standard, and the common-law principle that it codifies, are incorporated in Model Jury Charge (Civil), § 5.30D(2) "Violation of Traffic Act" (August 1999):

> In this case, plaintiff argues that defendant was negligent because defendant violated a provision of the motor vehicle laws. The provision referred to, N.J.S.A. 39:4-89, is as follows: The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway.

In the form set forth in the Model Jury Charge, the instruction envisions that the driver following behind another driver at the time of a motor vehicle collision is the defendant, not the plaintiff. Like all model charges, however, the Model Jury Charge must be adjusted, as necessary, to conform to the particular facts of a given case. See Komlodi v. Picciano, 217 N.J. 387, 420 (2014) (noting "[a]s with all jury instructions, the trial judge should tailor the charge to the facts and the parties' arguments"). Here, the driver subject to the duty set forth in N.J.S.A. 39:4-89 was plaintiff, not defendant, and the trial court should have ensured that the Model Jury Charge was tailored to reflect that fact.

Instead, the trial court juxtaposed the parties in its recitation of the charge, instructing the jury that defendant had the obligation to follow plaintiff's vehicle at a safe distance, and repeated the error after being alerted to it by

24

defendants' counsel.  Although the trial court belatedly mentioned the possibility that plaintiff was negligent, the jury may have been left with the mistaken impression that defendants' vehicle followed plaintiff's vehicle too closely, when defendants' vehicle indisputably was ahead of plaintiff's vehicle prior to the collision.  The trial court's charge on this important issue was contradictory and confusing, and constituted error.

D.

Finally, we review the trial court's failure to instruct the jury that plaintiff, who collected PIP benefits, was not entitled to an award for medical expenses as an element of damages in her civil claim.

New Jersey's 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, bars the admission, in a civil action for personal injury damages, of "evidence of the amounts collectible or paid under a standard automobile insurance policy pursuant to [N.J.S.A. 39:6A-4, -10] . . . to an injured person, including the amounts of any deductibles, copayments or exclusions, including exclusions pursuant to [N.J.S.A. 39:6A-4.3], otherwise compensated." N.J.S.A. 39:6A-12.  The statute provides:

> The court shall instruct the jury that, in arriving at a verdict as to the amount of the damages for noneconomic loss to be recovered

25

> by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage payable under a standard automobile insurance policy pursuant to [N.J.S.A. 39:6A-4, -10]. . . .
>
> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.
>
> [Ibid.]

Thus, "testimony as to the amount of lost wages and medical expenses collectible or paid as PIP benefits . . . is not admissible in evidence." Clifford v. Opdyke, 156 N.J. Super. 208, 213 (App. Div. 1978) (citing N.J.S.A. 39:6A-12). In accordance with the statute, Model Jury Charge (Civil) § 8.20 "Medical Expenses (Auto)" (December 1996) states, "[t]he plaintiff's claim in this case does not include any claims for medical expenses. Therefore, in determining the reasonable amount of damages due to plaintiff, you shall not speculate about the medical expenses plaintiff may have had."

In Espinal v. Arias, the Appellate Division reversed a jury verdict because the trial court improperly denied defense counsel's request for a charge instructing the jury not to consider the plaintiff's medical expenses in determining its verdict for noneconomic damages. 391 N.J. Super. 49, 62 (App. Div.), certif. denied, 192 N.J. 482 (2007). There, the

26

"[p]laintiff offered no evidence of medical expenses during trial, but he did testify that he had received medical treatment." Ibid. The panel noted that "[i]n the absence of [the model] charge, the jury might speculate about a plaintiff's medical expenses in arriving at a damages verdict." Id. at 63. The panel rejected the trial court's determination that the jury instruction was unnecessary in light of the absence of any claim for medical expenses, noting that "it is exactly under those circumstances when this charge must be given." Ibid.

In this case, plaintiff's testimony extended beyond the comments about medical treatment that the Appellate Division considered in Espinal. Unprompted by her counsel, plaintiff told the jury that she was unable to pay "[h]undreds, thousands of dollars" in medical bills. Defendants did not ask the trial court to give the model charge admonishing the jury not to include medical expenses in its calculation of damages. Nonetheless, the trial court erred when it failed to include the medical expenses charge in its jury instructions. Without the guidance of that charge, the jury may have mistakenly assumed that the medical expenses described by plaintiff constituted an element of her claim for damages.

E.

An appellate court may reverse a trial court's judgment if "the cumulative effect of small errors [is] so great as to work

27

prejudice[.]" <u>Pellicer v. St. Barnabas Hosp.</u>, 200 <u>N.J.</u> 22, 53 (2009).[2]  In <u>Pellicer</u>, <u>supra</u>, the Court noted that by virtue of the aggregate effect of a series of errors addressed in that case, the trial court had not afforded to the defendants a fair trial:

> Our review of the record convinces us that, taken together, these numerous claims of error cannot be explained away as harmless.  They are not simply a litany of minor or inconsequential matters of no substance or significance. Rather, they represent real and repeated errors that cumulated so as to unfairly tilt the balance in favor of plaintiffs and to deprive defendants of a fair trial.
>
> [<u>Id.</u> at 56-57.]

The Court cautioned that a cumulative error analysis does not "simply entail[] counting mistakes, because even a large number of errors, if inconsequential, may not operate to create an injustice."  <u>Id.</u> at 55.  It commented that it neither invited nor countenanced "appeals that do no more than point to minutiae in an effort to create the impression that there was an

---

[2]  If an appellate court finds cumulative error, it need not consider whether each individual error was prejudicial.  <u>See, e.g.</u>, <u>State v. Jenewicz</u>, 193 <u>N.J.</u> 440, 473 (2008) (asserting appellate courts "need not decide whether any of the individual errors found to have occurred in defendant's trial would amount to reversible error"); <u>State v. Koskovich</u>, 168 <u>N.J.</u> 448, 540 (2001) (stating "[b]ecause we find that those instructions constitute cumulative error warranting reversal of the death sentence, we do not address whether any of them, standing alone, would warrant that same result").

28

atmosphere of unfairness." Ibid. It recognized, however, that if the combined effect of multiple errors deprives a party of a fair trial, an appellate court should order a new trial. Id. at 55-57; see also Jenewicz, supra, 193 N.J. at 473 (noting cumulative effect of individual errors "can cast sufficient doubt on a verdict to require reversal"); Barber v. ShopRite of Englewood & Assocs., Inc., 406 N.J. Super. 32, 52-53 (App. Div.) ("When 'legal errors are manifest that might individually not be of such magnitude to require reversal but which, considered in their aggregate, have caused [a party] to receive less than a fair trial,' a new trial is warranted." (alteration in original) (quoting Eden v. Conrail, 175 N.J. Super. 263, 267 (App. Div. 1980), modified by 87 N.J. 467 (1981))), certif. denied, 200 N.J. 210 (2009). Thus, in our review of defendants' claim of cumulative error, we consider the aggregate effect of the trial court's errors on the fairness of the trial. Pellicer, supra, 200 N.J. at 56-57.

We conclude that the trial court's five erroneous determinations gave rise to cumulative error warranting a new trial. The court's rulings affected both the issue of liability and the determination of damages. The Clawans instruction regarding Pabon suggested to the jury that defendants had concealed potentially dispositive information on defendants' negligence. By allowing plaintiff to read her requests for

29

admissions to the jury, the trial court selectively informed the jury about aspects of Dr. Helbig's opinion that favored plaintiff. In giving a Clawans charge concerning Dr. Helbig, the court suggested that defendants feared the expert's disclosure of adverse evidence. The confusing jury instruction regarding a driver's duty to follow another driver at a safe distance suggested that defendant was subject to a finding of negligence because of a purported violation of the traffic statute. The trial court's failure to give the required charge regarding medical expenses permitted the jury to consider plaintiff's statements about her medical expenses in its calculation of damages.

Because of those errors, defendants were not afforded a fair trial on either liability or damages.[3] They are entitled to a new trial.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for proceedings in accordance with this opinion.

---

[3] We do not reach the issues of whether the trial court improperly limited the testimony of defendants' accident reconstruction expert, Karpovich, improperly denied defendants' motion in limine regarding the testimony of plaintiff's accident reconstruction expert, Suhaka, and improperly permitted plaintiff's treating physician, Dr. Yonclas, to testify despite the late service of his final report.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO. ___A-116___                    SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


SOFIA T. TORRES,

      Plaintiff-Respondent,

               v.

JAVIER PABON and SUBURBAN
DISPOSAL, INC.,

      Defendants-Appellants.



DECIDED _____June 1, 2016_____
            Chief Justice Rabner         PRESIDING

OPINION BY _____Justice Patterson_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____


| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ------------------ | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |