**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2257-24

BOGUSLAW PLONSKI and
JADWIGA WALCZAK, his wife,

     Plaintiffs-Respondents,

v.

ALLAN J. AMADOR-HODGSON
and NEW JERSEY TRANSIT CORP.,

     Defendants-Appellants,

and

NEW JERSEY TRANSIT CORP. and
ALLAN J. AMADOR-HODGSON,

     Defendants/Third-Party
     Plaintiffs-Appellants,

v.

ADAM PLONSKI and WHITE
EAGLE INC.,

     Third-Party Defendants-
     Respondents.

_____

Argued October 1, 2025 – Decided January 12, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5212-21.

Jason D. Attwood argued the cause for appellants (Attwood Corlett, LLC, attorneys; Dawn Attwood, on the briefs).

Lynn Hershkovits Goldberg argued the cause for respondents Adam Plonski and White Eagle, Inc. (Law Office of Debra Hart, attorneys; Lynn Hershkovits Goldberg, of counsel and on the brief).

PER CURIAM

In this personal injury matter, the trial court granted plaintiffs' and third-party defendants' motion for summary judgment on the issue of liability after concluding defendants New Jersey Transit Corporation and Allan J. Amador-Hodgson (defendants) were 100% liable as a matter of law for a rear-end accident that occurred on the New Jersey Turnpike. The court denied defendants' subsequent motion for reconsideration.

After careful review, we conclude the trial court improperly usurped the jury's fact-finding role as to the issues of proximate causation and comparative negligence. We reverse the orders granting plaintiffs' and third-party

defendants' motions for summary judgment on the issue of liability and remand for trial.

I.

At the time of this incident, third-party defendant Adam Plonski was driving a box truck owned by third-party defendant White Eagle Inc.[1] in the northbound right lane of the New Jersey Turnpike. Plaintiffs were passengers in the box truck. Defendant Allan J. Amador-Hodgson was driving a bus for defendant New Jersey Transit Corporation (NJT) and was travelling behind Plonski in the northbound right lane. The accident occurred when the bus struck the box truck on the left rear side as Amador-Hodgson attempted to move into the center lane.

Plaintiffs filed a complaint against defendants, asserting personal injuries sustained in the motor vehicle accident. Defendants moved for and were granted leave to file a third-party complaint against Plonski. Thereafter, plaintiffs and Plonski moved for summary judgment on the issue of liability. The parties submitted a twenty second clip of dash camera footage from the NJT bus depicting the ten seconds before the bus collided with the left rear of the box truck.

---

[1] We refer to third-party defendants collectively as Plonski.

A-2257-24

During his deposition testimony, Amador-Hodgson essentially testified that he first observed the box truck when he was approximately half a mile away from it. As he approached the box truck, Amador-Hodgson realized he was approaching it too quickly. He looked into his side view mirror and saw a tractor trailer passing him which prevented him from changing lanes. After the tractor trailer passed, Amador-Hodgson swerved to his left trying to avoid striking the box truck, but the front right side of the bus struck the left rear portion of the box truck.

Although the parties requested oral argument, the court considered and granted the motions on June 7, 2024, without hearing argument. The orders each stated: "Originally, Amador-Hodgson told the police that he was cut off by the Plonski vehicle. Video recording from Amador-Hodgson's vehicle revealed that he lied and that this accident was a same lane rear-end hit." The trial court cited to Dolson v. Anastasia, 55 N.J. 2 (1969), and stated that "[n]o amount of additional discovery will have any impact on liability."

Defendants moved for reconsideration of the summary judgment orders. They included expert reports from Kevin Tully, an accident reconstructionist, and Adam Cybanski, a video forensic examiner. The reports had been included in amended interrogatories in accordance with a discovery order.

Cybanski found in his report that the NJT bus was traveling between sixty-two and sixty-five miles per hour prior to the collision and the box truck was traveling between thirty to thirty-three mph prior to the collision. The speed limit on the Turnpike was sixty-five mph.

Cybanski noted that the dash camera footage showed a tractor-trailer traveling in the middle lane on the Turnpike at approximately seventy-three mph when it passed the NJT bus. According to Cybanski, approximately 4.25 seconds prior to the collision, Amador-Hodgson checked his mirrors as the tractor-trailer passed him. Amador-Hodgson then checked his mirrors for a second time as the tractor-trailer was slightly farther down the Turnpike. At this point, Amador-Hodgson had not decelerated from his speed of sixty-two to sixty-five mph and the box truck remained traveling at a speed of thirty to thirty-three mph as the NJT bus collided with it.

Tully opined that "Plonski was operating his vehicle below the minimum speed limit at the time of the collision event, with no flashers or brake lights illuminated." He further found that Plonski "was operating his vehicle significantly slower than the flow of traffic of vehicles around him prior to and at the time of the collision event, which impeded or blocked the normal and reasonable movement of traffic."

A-2257-24

Tully described this type of crash as a "looming crash," stating:

> Looming crashes are among the most serious, according to research, because drivers struggle to identify the rate at which they are closing on the vehicles ahead. Drivers can see the vehicle and they can even identify that they are closing on the vehicle, but when there are large disparities in speed, particularly on highways where slow moving vehicles are not expected or permitted, drivers have difficulty identifying the rate of the closing speed. Looming crashes occur when the lead vehicle is traveling slowly on the roadway ahead and ha[s] more than a 30 mph closing speed with a time to crash in excess of three seconds. This type of crash is difficult for drivers to respond to because depth perception is relatively poor at long distances, making it difficult to determine the rate of change of speed at long distances. . . . Once the looming threshold recognition is met, the reaction time before hard braking or swerving is approximately 2 seconds.

In its written statement of reasons, the trial court initially acknowledged that defendants could establish that Plonski had a duty of care and may have breached that duty because

> [a]ccording to N.J.A.C. 19:9-1.2e, the minimum lawful speed on the turnpike is 35 miles per hour. If Adam Plonski was driving less than 35 miles per hour then he could have conceivably been cited for violating N.J.S.A. 39:4-97.1, impeding the flow of traffic. Such a finding would constitute evidence of negligence and a breach of the duty of care.

However, the trial court found that defendants could not establish proximate cause, stating "[b]ased on the dash cam video from the [NJT] bus, this court finds that no reasonable factfinder could conclude that Adam Plonski's driving too slowly makes him at all liable for this accident."

The court also rejected defendants' claims of comparative negligence, concluding that

> [b]ased on the video which depicts [the] accident, the court finds that Adam Plonski's driving too slowly, at best, amounts to a remote, trivial, or inconsequential cause. If Adam Plonski's slow driving did amount to a substantial factor, then foreseeability must be considered. . . . Again, based solely on the video, the court finds that no reasonable factfinder could find that the bus driver could not avoid this accident. If [appellants] could establish a prima facie case of "substantial factor" proximate cause and foreseeability, this court finds that the bus driver's failure to decelerate would, as a matter of law, serve to break the chain of causation attributed to Adam Plonski. In other words, . . . Amador-Hodgson's failure to slow down would constitute an intervening cause.

The court denied the motion for reconsideration, stating:

> [Defendants] are correct in their assertion that a rear end hit does not automatically mean that the rearward vehicle is 100% liable. There are factual scenarios in which a jury would be permitted to consider comparative negligence on the part of the driver of the preceding vehicle. . . . However[,] the court finds now, as it did on June 7, 2024, that in this case a reasonable factfinder could not ascribe any percentage of liability

7

on the owner/operator of the preceding vehicle. . . . This court, notwithstanding the recent interposition of [defendants'] two expert reports, finds that the evidential record is so one-sided, that . . . [defendants] must be deemed 100% liable as a matter of law.

[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995).]

After this court denied defendants' motion for leave to appeal, the Supreme Court granted leave to appeal and summarily remanded to this court to consider the interlocutory appeal.

II.

On appeal, defendants contend that the trial court erred in deciding the issue of proximate cause as a matter of law and in concluding that Amador-Hodgson's alleged negligence was an intervening, superseding cause of the accident as a matter of law. We agree.

Our review of the trial court's grant or denial of a motion for summary judgment is de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. "The court's function is not 'to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). A court properly grants summary judgment "when the evidence 'is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986)).

Defendants contend that the trial court improperly granted summary judgment in favor of plaintiffs and third-party defendants on the issue of liability because a jury could find Plonski's operating a vehicle at thirty miles per hour—thirty miles under the posted speed limit—was a proximate cause of the accident.

To establish a cause of action for negligence, a plaintiff must establish four elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008) (alterations in original) (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)). Defendants contend there remains an issue of fact as to the proximate cause of the accident.

Here, a reasonable juror could conclude that Plonski's act of driving thirty miles under the posted speed limit on an interstate highway breached his duty of care to other drivers on the roadway. In fact, the trial court took judicial

notice of N.J.A.C. 19:9-1.2e in its opinion denying defendants' motion for reconsideration, which states that:

> No vehicle shall be operated anywhere on the [Turnpike] at such a slow speed as to impede or block the normal and reasonable movement of traffic, or in any event at a speed of less than 35 miles per hour on level ground except where otherwise posted or when specific hazards exist with respect to traffic, road or weather conditions.

Despite its notation of this regulation, the trial court did not find that Plonski's slow speed had any causal relationship to the accident.

As we have stated, "[i]t is for the jury to determine the credibility, weight, and probative value of the evidence." Rubanick v. Witco Chem. Grp., 242 N.J. Super. 36, 48 (App. Div. 1990). This includes expert evidence. See Espinal v. Arias, 391 N.J. Super. 49, 58 (App. Div. 2007) ("While the trial judge must determine whether the expert's training and experience are sufficient to permit the expert to state an opinion, it remains the jury's function to determine the worth of that opinion.").

The trial court found that Plonski owed a duty to the other drivers on the roadway, including Amador-Hodgson, and that a jury could find he breached this duty by travelling significantly below the speed limit on this busy highway. However, we cannot agree this same evidence supported a ruling that Plonski

10

could not be found liable to plaintiffs as a matter of law. For the same reason a juror could conclude Plonski breached his duty to operate the box truck as a reasonable driver would under the same circumstances, so could the same juror conclude that Plonski's extraordinarily slow speed was a contributive factor in causing the accident—even if he were deemed only 1% negligent.

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios, 247 N.J. at 13. The issue of proximate causation regarding Plonski's responsibility for the accident was a matter to be resolved by the jury. It is within the jury's province here to assess the liability of defendants and Plonski and make determinations regarding proximate cause and the percentages of negligence to be attributed to each, if any.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

11                                                          A-2257-24